UNITED STATES, Appellee,

v.

Private First Class Gene A. HILL, SSN
410–06–3196, United States
Army, Appellant.

SPCM 19818.

U.S. Army Court of Military Review.

13 Aug. 1984.

Lieutenant Colonel Paul J. Luedtke, JAGC, Captain L. Sue Hayn, JAGC, and Captain Rita R. Carroll, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, and Captain Samuel J. Rob, JAGC, were on the pleadings for appellee.

Before SUTER, McKAY and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Senior Judge:

In accordance with his pleas, the appellant, Private Hill, was convicted by a military judge sitting as a special court-martial of two specifications of distribution of marijuana in the hashish form, a violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (1982). He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $382.00 pay per month for six months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

Before this Court, the appellant has alleged several errors regarding the presence and impact of unlawful command influence within the 3d Armored Division. Two of these errors allege, in substance, that the convening authority, Major General Anderson, was disqualified from referring the appellant's case to trial and from reviewing and taking action on the case. We resolve these issues adversely to Private Hill. *See United States v. Yslava,* 18 M.J. 670 (A.C.M.R.1984); *United States v. Treakle,* 18 M.J. 646 (A.C.M.R.1984). The appellant

also argues that the military judge improperly prohibited Private Hill's defense counsel from developing facts relevant to the issue of the effect of illegal command influence upon the presentation of evidence favorable to Private Hill during the sentencing portion of his trial and, in a related vein, that Private Hill was denied a fair sentencing proceeding due to the presence of unlawful command influence. We agree and will take corrective action.[1]

During the sentencing portion of the appellant's trial, First Lieutenant David Sanders was called as a defense witness. Lieutenant Sanders, who was a member of Private Hill's battalion, testified that he was aware of the letter written and distributed by the Division Command Sergeant Major (hereinafter referred to as the Haga letter) and containing his thoughts on what a good noncommissioned officer should and should not do regarding testimony at courts-martial. Lieutenant Sanders further testified that his battalion commander, at an officer's professional development class, read and "interpreted" a policy letter from General Anderson indicating that although a witness called before a court-martial should testify truthfully, he should "not paint so rosy a picture that all of the effort and time expended in creating the ... court-martial packet would be just wasted, by recommending that the soldier remain on active duty." Lieutenant Sanders averred that his battalion commander's "guidance" had not influenced his testimony. He testified that Private Hill could be rehabilitated and be of benefit to the Army.

On redirect examination, Private Hill's defense counsel asked Lieutenant Sanders whether he knew what effect the Haga letter may have had on any of the other witnesses in the appellant's case. The trial counsel objected to the question and his objection was sustained. Although Lieutenant Sanders was examined further regarding the Haga letter and his battalion commander's statements, he was not permitted to answer the question regarding the effect of these matters on other witnesses. When the appellant's defense counsel attempted to delve deeper into Lieutenant Sanders' knowledge of the effect of command influence on the appellant's case, the military judge abruptly curtailed questioning, demanding that the defense counsel demonstrate the relevant to the appellant's trial of testimony regarding command influence. When the defense counsel's response—that, although Lieutenant Sanders had not been affected, others might have been—did not satisfy the military judge, he refused to allow further questioning regarding command influence.

■ Article 37, UCMJ, prohibits coercion or unauthorized influence on actual or prospective witnesses with respect to the content of their testimony. *United States v. Treakle*, 18 M.J. 646 (ACMR 1984). A finding that unlawful pressure has been brought to bear in violation of Article 37 triggers a rebuttable presumption that the recipient of the unlawful pressure was in fact influenced. *Id.* Accordingly, if any prospective character witness for Private Hill heard, either directly or indirectly, General Anderson's message, the battalion commander's interpretation of the message, or the Division Command Sergeant Major's message, and reasonably understood them to be discouraging favorable character testimony, such discouragement would amount to unlawful pressure under Article 37, UCMJ, and would raise the presumption.

1. Although not raised by counsel, we have considered the issue of whether the providency of Private Hill's pleas was affected by unlawful command influence. We find the pleas to be provident. Private Hill sold hashish to an undercover military police investigator on two separate occasions. He later rendered a sworn statement admitting the sale. He negotiated a pretrial agreement with the convening authority in exchange for his promise to plead guilty. Private Hill's pleas of guilty were accepted after a thorough and searching providence inquiry.

We believe Private Hill's decision to plead guilty was not affected by the existence of illegal command influence within the 3d Armored Division, but was based instead on his evaluation of the evidence against him and on his desire to limit the punishment he might receive.

In this case, the military judge denied the defense counsel the opportunity to present evidence that potential witnesses were influenced not to testify on Private Hill's behalf. In a situation where the evidence of unlawful command influence within the 3d Armored Division was so squarely raised, the military judge's refusal to allow defense counsel to pose a question so fundamental to his case was error.

We turn now to the question of prejudice. Lieutenant Sanders testified that he was not influenced by his commander's statements. He was not allowed to answer the question as to whether any other witnesses might have been influenced. This Court has previously found that unlawful command influence was present in the 3d Armored Division as a result of conduct by that unit's commander. *See United States v. Yslava*, 18 M.J. 670 (ACMR 1984); *United States v. Treakle*, 18 M.J. 646 (ACMR 1984). On these facts alone, we believe a rehearing would be justified to enable Lieutenant Sanders to answer the fundamental question. In this case, however, we have determined a different disposition to be more appropriate.

We can gain some insight into the information Lieutenant Sanders' might have provided by examining Defense Appellate Exhibit M, an affidavit executed by Lieutenant Sanders a little more than two weeks after Private Hill's trial. This information exposes another serious problem in this case resulting from the conduct of General Anderson.

Referencing Private Hill's court-martial, Lieutenant Sanders stated that after the Haga letter had been disseminated throughout his battalion, it was discussed during a meeting of the battery commanders and the battalion staff. A point of the discussion was that a witness could refuse to answer the question of whether a convicted soldier should be retained in the Army. The battalion command sergeant major, who attended the meeting, presented the letter the following day to the battalion first sergeants, who, in turn, distributed the letter to the section chiefs. The letter was again discussed at an S–2 and S–3 Section meeting among officers, noncommissioned officers, and enlisted members. The impression of the letter among those present was that no senior noncommissioned officer or officer should testify favorably before an administrative board or a court. The battalion commander's advice not to "embarrass the command by making a recommendation, in testimony, that the board or court should allow the individual to remain on active duty" was reiterated. Although members of the battalion were also made aware of a later letter from General Anderson, it was not perceived as a retraction of the Haga letter.

In light of the information contained in Lieutenant Sanders' post-trial affidavit, we believe it is clear that at least one witness who testified in Private Hill's behalf was adversely influenced by what was perceived as General Anderson's message. Staff Sergeant Noris Bodley, Private Hill's section chief, when asked whether Private Hill could be rehabilitated and retrained and still benefit the Army, replied:

> Sir, in my opinion, and *I hope it goes good on the record,* I feel that PFC Hill can be rehabilitated due to the fact of my prior knowledge of PFC Hill. If he was a problem within the unit, within the personnel that works around him, myself, his platoon sergeant, platoon leader, then I can see where he would not benefit the Army, but there's one thing the Army doesn't tolerate, and that's drugs, *so I wouldn't care to answer that as far as the Army keeping him, but he can be rehabilitated.* (Emphasis added).

We believe that Sergeant Bodley's concern for how he would sound "on the record" and his reluctance to opine whether Private Hill should be retained in the service can be attributed directly to the unlawful influence visited upon him by General Anderson, the Division Command Sergeant Major, and his battalion commander.

Finding that Sergeant Bodley's testimony was in fact negatively influenced by the presence of command influence, we need no

longer concern ourselves with the operation of a presumption of prejudice and whether such presumption has been rebutted. The only question is the nature of the relief to be provided the appellant.

Since the unlawful command influence brought to bear upon members of the 3d Armored Division was directed primarily toward the discouragement of testimony which might encourage a military judge or court-members to retain a convicted soldier within the Army, we believe that the prejudice suffered by Private Hill can best be remedied by reassessing his sentence not to include a punitive discharge.

The findings of guilty are affirmed. Only so much of the sentence is approved as provides for confinement at hard labor for three months, forfeiture of $382.00 pay per month for six months, and reduction to the lowest enlisted grade.

Chief Judge SUTER concurs.

Judge WATKINS did not participate in this decision.