UNITED STATES, Appellee,

v.

Specialist Four Mark N. BREININGER, 182–42–8571, United States Army, Appellant.

CM 444561.

U.S. Army Court of Military Review.

30 Aug. 1985.

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Thomas J. Feeney, JAGC, Captain Jesse W. Bendahan, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, Captain Robert L. Swann, JAGC, Captain Edmond R. McCarthy, Jr., JAGC (on brief).

Before YAWN, BOOKOUT, and KENNETT, Appellate Military Judges.

OPINION OF THE COURT
ON REMAND

YAWN, Senior Judge:

Appellant was tried by a military judge sitting as a general court-martial for wrongful possession of marijuana with the intent to distribute in violation of Article 134, 10 U.S.C. § 934, Uniform Code of Military Justice. Upon his plea of guilty, he was convicted and sentenced to reduction to the grade of Private E–1, forfeiture of all pay and allowances, confinement at hard labor for 18 months, and a bad-conduct discharge. The convening authority approved the sentence.

On 12 April 1984, this court affirmed the findings of guilty and sentence in an unpublished opinion. Subsequently, as a result of an affidavit filed by appellant before the United States Court of Military Appeals, the case was remanded to this court for consideration of an assertion by appellant that he was denied a fair sentenc-

ing proceeding because of unlawful command influence. This issue was not raised during appellant's trial or when the case was previously considered by this court.

In his affidavit, executed one year after trial, appellant avers that his supervisor, Chief Warrant officer, W–2 (CW2) Scanlan, told him before his trial that the Assistant Division Commander, Colonel (COL) Crouch, had told CW2 Scanlan and the Division Signal Officer, Major (MAJ) Belanus, that the command did not want people interfering with appellant's prosecution. Appendix A. Affidavits from both CW2 Scanlan and MAJ Belanus have been filed with this court. Appendices B and C. While these individuals acknowledge the command was interested in appellant's court-martial, they deny knowing of any improper influence being exerted on anyone.

MAJ Belanus states that he knew COL Crouch wanted a speedy trial with example-setting sentences for appellant and his associates but is not sure how he acquired this knowledge since he only "felt" COL Crouch had such an attitude. MAJ Belanus did not discuss the subject with COL Crouch. Additionally, MAJ Belanus states he recalls the Chief of Staff "inferring [sic] trouble" for any who might help in appellant's defense but does not remember the Chief of Staff's exact statement. MAJ Belanus avers that the staff generally ignored the Chief of Staff "when he got like this." MAJ Belanus also states he does not think the Chief of Staff had any influence on the trial.

Relying upon these affidavits, appellant argues that at least two senior members of his command attempted to unlawfully influence his court-martial and exert improper command influence. We find no merit to this argument and affirm.

When an appellant alleges for the first time at the appellate level that unlawful command influence affected his trial, he must show more than a *possibility* that his trial was adversely affected by such influence to shift to the government the burden of persuading this court to the contrary. *United States v. Cruz*, 20 M.J. 873, 886–87 (ACMR 1985). He must present evidence which would lead a reasonable person to conclude, under the totality of circumstances, that unlawful command influence affected his case. *Id.* at 886. The appellant has failed to sustain this burden.

Appellant's claims concerning CW2 Scanlan's statements to him have been denied by CW2 Scanlan. In addition, both CW2 Scanlan and MAJ Belanus deny that COL Crouch attempted to influence them in any way. Finally, despite what the Chief of Staff may have said or done, MAJ Belanus states the Chief of Staff was "pretty much ignored." The only evidence that provides any tangential support for appellant's contention is MAJ Belanus's belief that COL Crouch and the Chief of Staff had strong feelings about appellant's offenses.

Appellant would have us focus solely upon this evidence and order a limited hearing to determine the impact COL Crouch and the Chief of Staff may have had upon the fairness of appellant's trial. As we made clear in *Cruz*, this court declines to engage in a selective analysis of evidence. At 885. We consider all of the evidence before the court to determine whether a claim of unlawful command influence invites further inquiry.

In analyzing the evidence, we consider, as we did in *Cruz*, at 888, whether appellant possessed sufficient facts to raise and litigate the issue of command influence at trial. Here, appellant had his conversation with CW2 Scanlan prior to being court-martialed. For some reason undisclosed to this court appellant chose not to litigate the issue at trial. Had he done so, the testimony of all concerned would have been recorded and subjected to cross-examination. The military judge could have made findings regarding appellant's contentions and, if appropriate, could have fashioned a remedy to address any legal errors.

If these actions had been taken below, this court would not now be asked to speculate whether unlawful command influence had any effect upon appellant's court-martial. Given appellant's failure to raise com-

mand influence at trial, we feel justified in drawing any reasonable inferences against him with respect to factual matters not fully developed in the record of trial. *See United States v. Lockwood,* 15 M.J. 1, 7 (CMA 1983).

Applying this method of analysis to the evidence before the court, we find the differences between CW2 Scanlan's and appellant's recollection of their discussion must be resolved against appellant. CW2 Scanlan admits he attended a meeting with COL Crouch and MAJ Belanus but denies that COL Crouch exerted any pressure to discourage testimony for appellant. CW2 Scanlan also believes he told appellant the command was extremely upset and it might not be a good idea for appellant to ask MAJ Belanus to testify for him. CW2 Scanlan says he did not make the latter statement because pressure had been exerted on MAJ Belanus but because he knew MAJ Belanus had strong feelings about drug use. These statements are consistent with the averments in MAJ Belanus's affidavit.

Given the circumstances, we find it reasonable to conclude that the lapse of a year between appellant's conversation with CW2 Scanlan and the execution of appellant's affidavit, coupled with appellant's appreciation of the significance of his conviction, colored appellant's recollection of CW2 Scanlan's precise statements. Contrary to appellant's assertions, the evidence before us provides no support for finding that either COL Crouch or the Chief of Staff had any impact upon the fairness of appellant's trial. The facts of this case, considered under the totality of circumstances, simply do not shift to the government the burden of persuasion regarding the presence or absence of unlawful command influence.

The decision of this court in this case dated 12 April 1984 is reaffirmed and remains in effect.

Judge BOOKOUT and Judge KENNETT concur.

## APPENDIX A

### AFFIDAVIT

I, MARK N. BREININGER, SSN # 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 having been duly sworn, do hereby depose and state the following to be true:

I, MARK N. BREININGER, had a conversation during the time frame between the date I was apprehended and the date I was tried by court-martial, with CW2 Thomas J. Scanlan, the Division COMSEC custodian, (my supervisor) concerning the command's interference with potential witnesses I would have called on to testify for me. Specifically, Mr. Scanlan told me that he was called to a meeting at the 2d Armored Division Headquarters building by Colonel Crouch. I am not sure what position Colonel Crouch held in the 2d Armored Division, but I believe he was the Assistant Division Commander. Also present at the meeting was the Division Signal Officer, a major, whose name I no

longer recall, but who I had worked for on numerous occasions. Mr. Scanlan told me that Colonel Crouch told him and the Division Signal Officer that the command didn't want people interfering with my prosecution. I had done a good job for the Division Signal Officer. He had always praised me for the job I had done. After the meeting with Colonel Crouch, however, the Division Signal Officer's attitude toward me changed and he basically told me not to look to him for help.

Mr. Scanlan told me he would testify for me anyhow because he knew he was not going to get promoted anyway, and was getting out of the Army. Mr. Scanlan pointed out to me he could get away with testifying for me but the Division Signal Officer was a commissioned officer and had a lot of time left to do in the Army.

_MNB_ (Because of time left in service) (_MNB_ retiring)

_[signature]_
MARK N. BREININGER

Acknowledgement

State of Kansas       )
County of Leavenworth)

Subscribed and sworn to before me this 5th day of July, 1984, at Fort Leavenworth, Kansas, 66027.

My Appointment Expires

_[signature]_
(Notary Public)

_____

NOTARY PUBLIC - State of Kansas
CYNTHIA L. MONROE
My Appt. Exp. Jan. 20, 1985

## APPENDIX B

### AFFIDAVIT

| STATE OF UTAH | ) | |
|---|---|---|
| | ) | SS |
| County of Davis | ) | |

I, THOMAS J. SCANLAN, SSAN 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, to the best of my knowledge had no command influence applied to me before, during or after my testimony in the court-martial of Specialist MARK BREININGER. Concerning the meeting I attended with Major Belanus and Colonel Crouch, Colonel Crouch did not apply any influence towards not testifying for Specialist Breininger. I did infact testify for Specialist Breininger as to his prior performance and I still feel that he was a good soldier, extremely dependable and knowledgeable, and had just made a very bad mistake. As for Major Belanus testifying or not testifying for Specialist Breininger, I have no knowledge. Concerning my conversations with Specialist Breininger, I am sure that I told him that he was going to be court-martialed and that the entire command was extremely upset by the incident because of the position of trust that everyone in our section held. I also told him that I would testify for him and that it might not be a good idea for him to have Major Belanus testify for him, because I knew Major Belanus had very strong feelings on the use of drugs by anyone. I did not say that the command was exerting any influence on Major Belanus or myself and to the best of my knowledge none was exerted. I swear that all of the above is true to the best of my knowledge.

THOMAS J. SCANLAN
CW2    U.S.A.

STATE OF UTAH )
) SS
County of Davis )

On the 13th day of December, 1984, personally appeared before me, THOMAS J. SCANLAN, the signer of the attached Affidavit, who executed the same in my presence.

GWENDOLYN RUSSELL, Notary Public
Residing in: Ogden, Weber, Utah
My Commission Expires: 19 APRIL 1988

## APPENDIX C

- Statement -

This Statement pertains to Mark Breninger's situation while he was assigned to 2AD(FWD) as a CONSEC Repairman. Mark Breninger worked in the repair shop for CW-2 Thomas Scanlan. I was Scanlan's leader so thus had indirect leadership responsibility for SP4 Breninger. When SP4 Breninger was arrested, the technicalities of his trial were taken care of by the Company Commander. I was not formally involved. I did, along with Scanlan, take administrative action to suspend Breninger's security clearance, eliminate his access to classified materials and make him available for other (unclassified) duties. Because of my relationship to Breninger and my position on the staff, I was able to see the 2AD(FWD) chain of command react to Breninger's arrest. I'll discuss two leaders here. Those not discussed (the CG, the company commander) may or may not have tried to use command influence the case's outcome, but I wouldn't know. Beginning with Colonel William Crouch, the ADC: Col. Crouch felt betrayed (as I did) by the behavior of Breninger and associates. As consec repairers they worked in a restricted environment. By the nature of the work, the CONSEC people didn't get a lot of supervision. We trusted them. And, this group did good enough work that I bragged about their CONSEC skills a little. So, generally, after the arrests we in the chain of command felt angry an betrayed. We felt a trust had been violated. I knew Col Crouch was angry about this group's behavior and that he wanted a speedy trial with example-setting sentences for those who betrayed him. But I'm not sure how I knew this since I only felt his attitude, never discussing it with him. In fact I remember discussing the ADC's feelings with CW-2 Scanlan, PFC(?) Bebune(sp) and perhaps others. From my experience in working with Col Crouch I believe him to be an honorable man. I don't think he did or would do anything to influence the trial. He did not discourage me from appearing at the trial. Col James Carson (then LTC) was the chief of staff.

He was very negative concerning SP4 Beringer & others in this legal case. I can recall him inferring trouble for any of us who might help in the defense, but I can't remember his exact words. I also believe others were present but I don't remember whom. I don't think he influenced the trials though. We had a very honorable and strong SJA at the time and I doubt that Col. Carson could influence him — or his people who he seemed to control well. Besides, we as a staff pretty much ignored Col. Carson when he got like this. I thought that the people in the CONSEC shop were first class technicians, that they were industrious, motivated and cooperative. I was perfectly willing to make such statements during the sentence determining part of the trial but was never asked to testify. That surprised me. If necessary, I can and will write a statement concerning their work and generally good attitudes toward it.

Terrance B. Belanus

MAJ SC

24 Jan 85

Sworn and subscribed to me this 24th day of January 1985.

Mary G. Manderschied

My Commission Expires April 8, 1987