**UNITED STATES, Appellee**

v.

**Private (E–2) Michael B. WHITAKER,**
**494–74–6947, United States**
**Army, Appellant.**

**CM 445267.**

U.S. Army Court of Military Review.

8 Nov. 1985.

---

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, Major Marion E. Winter, JAGC, Captain Rita R. Carroll, JAGC, Captain Thomas J. Feeney, JAGC, Captain Pamela A. Barron, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC, Captain Garreth E. Shaw, JAGC (on brief).

Before YAWN, WILLIAMS, and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

PER CURIAM:

This case is before the court for mandatory review pursuant to Article 66, 10 U.S.C.A. § 866, Uniform Code of Military Justice, following completion of a new review and action ordered by the court. *United States v. Whitaker*, CM 445267 (ACMR 27 Feb.1985) (unpub.). Appellant was tried in the 3d Armored Division by a general court-martial convened by Major General (MG) Thurman E. Anderson.[1] Pursuant to his pleas, appellant was convicted of various drug offenses, and was sentenced by the military judge to, *inter alia*, a bad-conduct discharge and confinement for two years. Major General Anderson approved the sentence, which was not affected by the pretrial agreement.

On further review, appellant renews the contentions that MG Anderson's conduct over an extended period of time disqualified him from referring the case to trial as the convening authority, and that appellant was denied a fair sentencing proceeding as a result of the unlawful command influence or the perception of unlawful command influence by MG Anderson.[2] Appellant requests we set aside the findings and sentence and dismiss the Charge and specifications or, alternatively, set aside the sentence and authorize a rehearing. We decline to do either.

Appellant's assertion that MG Anderson was disqualified from referring the case to trial has already been decided against appellant by *United States v. Treakle*, 18 M.J. 646, 654–55 (A.C.M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A.1985). *See United States v. Yslava,* 18 M.J. 670, 672 (A.C.M.R.1984), *pet. granted,* 19 M.J. 281 (C.M.A.1985). With respect to the effect MG Anderson's actions may have had on the sentencing proceedings, the resolution of that issue is controlled by this court's decision in *United States v. Cruz,* 20 M.J. 873 (A.C.M.R.1985) (en banc). *See United States v. Breininger,* 20 M.J. 1006 (A.C.M.R.1985).

Although appellant was tried on 28 October 1983, well after the issue of MG Anderson's activities had arisen among the defense counsel servicing the 3d Armored Division area,[3] appellant made no motion at

---

1. Appellant was assigned to a non-3d Armored Division unit that was attached to the division for general courts-martial purposes pursuant to the "area jurisdiction" concept in Germany.

2. *See United States v. Treakle,* 18 M.J. 646 (A.C.M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A.1985), and *United States v. Yslava,* 18 M.J. 670 (A.C.M.R.1984), *pet. granted,* 19 M.J. 281 (C.M.A.1985), for a detailed discussion of the evidence relating to command influence in

the 3d Armored Division during the time MG Anderson was in command.

3. *Id.* Although appellant was represented at trial by a civilian defense counsel, his detailed trial defense counsel, Captain Thomas M. O'Leary, signed the pretrial agreement and a stipulation of fact outlining appellant's offenses. We note that Captain O'Leary was one of the nine defense counsel assigned to the Trial Defense Service who was present at the 14 March

trial for dismissal or any other relief based upon the alleged unlawful command influence by MG Anderson. On appeal, however, in an attempt to support his argument that the sentencing proceedings were affected by MG Anderson's activities, appellant has presented us with the evidence which this court considered in its decisions in *United States v. Treakle* and *United States v. Yslava.*[4] We have also considered additional circumstantial evidence in the form of affidavits from Colonel John R. Bozeman, Lieutenant Colonel Mark A. Mueller, and Major Michael A. Buchanan, which was not available at the time of the *Treakle* and *Yslava* decisions.[5]

When an appellant alleges for the first time at the appellate level that unlawful command influence affected his trial, he must show more than a *possibility* that his trial was adversely affected by such influence to shift to the government the burden of persuading this court to the contrary. *United States v. Cruz*, 20 M.J. at 886. He must present evidence which would lead a reasonable person to conclude, under the totality of circumstances, that unlawful command influence affected his case. *Id.* The appellant has failed to sustain this burden. Sifting through the avalanche of affidavits filed in this case and others before this court, we find none from any members of appellant's battery, battalion, or brigade.[6] Thus, other than his general allegation that his sentencing proceedings were affected, appellant has offered no evidence that he was deprived of any witnesses. In cases involving *potential* witnesses, "there is a gap between the presumption flowing from a finding that unlawful pressure influenced the recipient and a finding of any prejudicial effect in the appellant's case." *United States v. Cruz*, 20 M.J. at

888. "[W]hat is needed to fill the gap is a showing that the witnesses would have affected the case or some decision regarding the case or would even have been called." *Id.* As was the case in *Cruz*,

> [A]ppellant has failed to provide us with even that evidence which is most readily available to him. He has failed to produce statements from his chain of command, or from the people to whom he would normally have gone in search of favorable testimony, stating how they interpreted the events in question, if they were affected, and if so how. What is more, he has failed to reveal the identities of the people he believes were in possession of relevant information which would have qualified them to testify in his behalf.

*Id.* We would add that, in the case at bar, appellant has failed to show that the individuals whose testimony he claims to have been denied had even heard of MG Anderson's comments.

The extenuation and mitigation evidence in appellant's case consisted of the testimony of three noncommissioned officers in appellant's chain-of-supervision, appellant's unsworn statement (both oral and written), and a congratulatory letter dated 14 February 1983 from the Major General then in command of the 32d Army Air Defense Command which praised appellant for scoring 96% on a recent Skill Qualification Test. The testimony of the three noncommissioned officer supervisors reflected that appellant's job performance was good to excellent and that appellant showed initiative. Knowing of appellant's conviction of drug offenses, one of the supervisors testified that appellant still had "rehabilitation potential." Considering the quality of

---

1983 meeting with MG Anderson. *See United States v. Treakle*, 18 M.J. at 652.

4. See note 2, *supra.*

5. *See United States v. Scott*, 20 M.J. 1012, 1013–14 (A.C.M.R.1985), for a discussion of this evidence. Although those affidavits have not been filed in this case, we take judicial notice thereof, as they were filed in *United States v. Scott, supra.* *See United States v. Surry*, 6 M.J. 800,

802 n. 4 (ACMR1978), *pet. denied*, 7 M.J. 62 (C.M.A.1979).

6. As noted in note 1, *supra*, appellant's unit (Battery A, 2d Battalion, 2d Air Defense Artillery) came under MG Anderson's authority as a general courts-martial convening authority only because of the "area jurisdiction" concept in Germany.

evidence presented on appellant's behalf, we are convinced that appellant was not prejudiced by any efforts, real or perceived, by MG Anderson to discourage favorable testimony. Moreover, we find the evidence as presented in the aforementioned affidavits [7] insufficient to raise a justiciable issue that actual unlawful command influence affected the sentencing proceedings in appellant's case as it only supports the general allegation that it was merely possible that his case was affected. Something more than a mere allegation of wrongdoing must be shown. For example, statements from members of appellant's chain of command or from other prospective witnesses who would have testified on his behalf might be sufficient to require the government to show there was no actual harm to appellant.[8]

■ As to any effect that MG Anderson's actions may have had on appellant's plea decision, our examination of the evidence of record convinces us that the validity of appellant's plea of guilty remains unaffected. As noted above, appellant has not yet raised the issue of a prejudicial denial of witnesses; this being the only means through which the validity of his plea could have been affected, it follows that we have no cause for concern on that score. Moreover, the record of trial reflects a potentially strong government case, a favorable plea bargain, and a searching inquiry by the military judge into appellant's plea of guilty. We are satisfied that appellant's plea of guilty was a knowing, intelligent, and voluntary act which was properly accepted by the military judge. *See United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

■ Our determination that appellant's claim of actual unlawful command influence merits no relief does not end our responsibility, however, as we must also consider whether the appearance of unlaw-

ful command influence exists. "It is axiomatic that the best way to dispel the appearance of evil is to publish the truth about the situation." *United States v. Cruz*, 20 M.J. at 890. "[T]he appearance of unlawful command influence will normally become relevant only in the absence of actual unlawful command influence because the process of publicly determining whether the appellant has been prejudiced by actual unlawful command influence, and remedying it if he has, will normally remove the appearance of unlawful command influence as well." *Id.* at 891. In the case at bar, the information already in the trial record, supplemented by the great mass of evidence furnished by the parties at the appellate level, and this court's judicial analysis of the circumstances, satisfies us that reasonable members of the public will conclude that no appearance of unlawful command influence affected the sentencing proceedings. Moreover, we believe that the result of our inquiry, which led us to conclude that appellant was not prejudiced by actual unlawful command influence, will likewise erase any public perception that the appearance of unlawful command influence affected appellant's trial.

We have considered the remaining assignments of error and find them to be without merit.

The findings of guilty and the sentence are affirmed.

YAWN, Senior Judge, concurring in part and dissenting in part:

In *United States v. Cruz*, 20 M.J. 873 (A.C.M.R.1985), this court fashioned a model by which command influence allegations would be tested. While discussing the use of that model, we stated:

> [A] case may occur in which the appearance of unlawful command influence is so aggravated and so ineradicable that

---

7. See notes 2 and 5, *supra*.

8. If appellant has anything further to offer, he is free to petition this court for permission to

submit it in connection with a request for reconsideration. *See* CMR Rule of Practice and Procedure 19.

no remedy short of reversal of the findings and sentence will convince the public that the accused has been fairly tried. *Id.* at 891–892. This is such a case, at least insofar as the sentence is concerned. Evidence of the unlawful command influence rampant in the 3d Armored Division during the time of this trial is adequately set out in previous opinions by this court and will not be repeated here. *See United States v. Treakle,* 18 M.J. 646 (A.C.M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A. 1985); *United States v. Yslava,* 18 M.J. 670 (A.C.M.R.1984) (en banc), *pet. granted,* 19 M.J. 281 (C.M.A.1985); *United States v. Thompson,* 19 M.J. 690 (A.C.M.R.1984); *United States v. Schroeder,* 18 M.J. 792, 793 (A.C.M.R.1984). With this as background, I am unable to conclude that reasonable members of the public can be convinced that appellant was fairly tried.

In regard to the remainder of the *Cruz* model, we held that, when an appellant alleges for the first time on appeal that unlawful command influence affected his trial, he must show more than a *possibility* that the trial was adversely affected by such influence in order to shift to the government the burden of persuading this court to the contrary. He must present evidence which would lead a reasonable person to believe, under the totality of the circumstances, that unlawful command influence affected his case. I do not interpret this holding to be inconsistent with that in *United States v. Johnson,* 14 C.M.A. 548, 34 C.M.R. 328 (1964) (the appearance of command influence provides a presumption of prejudice, but the presumption is rebuttable). *Cruz* simply provides a model for appellate courts to determine how much evidence must be presented in order to trigger the presumption (shift the burden of persuasion).

Applying this rationale, I believe, contrary to the view expressed by my brothers, that there is more than a possibility that appellant's trial was adversely affected by unlawful command influence. My experience as an officer and lawyer in the Army [1] is that, when a commander says he is angry about individuals giving favorable testimony on behalf of accused soldiers, people in his command pay attention. My experience also convinces me that, when this commander is a major general, and he expresses his displeasure in this regard in lectures over a period of a year and is joined by members of his staff and other subordinates in publicizing his view,[2] a rea-

---

1. *Cf. United States v. Ballard,* 20 M.J. 282, 286 (C.M.A.1985):

   We are ... well aware that the experienced and professional military lawyers who find themselves appointed as ... judges on the courts of military review have a solid feel for the range of punishments typically meted out in courts-martial. Indeed, by the time they receive such assignments, they can scarcely help it; and we have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which ... a court of military review assesses for sentence appropriateness.

   I believe the experience recognized by Judge Cox in *Ballard* applies equally to many other situations which arise in our practice in the Army.

2. The majority in *Treakle* concluded that Major General Anderson had acted in good faith. *Treakle,* 18 M.J. at 652. Information subsequently brought before this court casts serious doubt on the factual basis for that conclusion. For example, consider the discussion in *United States v. Scott,* 20 M.J. 1012, 1013–14 (A.C.M.R. 1985), concerning the affidavits of Lieutenant Colonel Mueller and Major Buchanan. Also, compare the testimony of the 3d Armored Division Command Sergeant Major that he did not staff his letter (this letter was discussed in *Treakle,* 18 M.J. at 651) before distributing it, record at 212, *United States v. Giarrantano,* 20 M.J. 553 (A.C.M.R.1985), with the statements of the Division Secretary of the General Staff that the letter was staffed. Record at 36–40, *United States v. Moore,* CM 445512 (A.C.M.R. 12 Feb. 1985) (unpub.) (record of trial returned for rehearing). Consider also the testimony of Sergeant First Class Larry J. Parks when he stated that, shortly after he had given favorable information on an accused soldier to this soldier's defense team, he was telephonically contacted by the office of the division command sergeant major and asked if he had read the Command Sergeant Major's letter. Record at 37, *United States v. Smith,* CM 444370 (A.C.M.R. 23 Jul. 1985) (this testimony arose during a sentence rehearing). I have judicially noted the records of trial in the above cases.

sonable person could conclude that every trial in that jurisdiction was very likely to have been affected by such unlawful actions.

That having been said, it becomes irrelevant to me that appellant has failed to produce affidavits showing he was deprived of a specific witness. The "burden of persuasion" has shifted to the Government. Certain intrusions by commanders into the court-martial process, even when no severe prejudice is apparent,[3] should be dealt with in a manner that denies all effect to the illegal activity. Misconduct of commanders that warps and perverts the proper administration of military justice warrants severe sanctions, not only to redress the injury but also to thwart the temptation to repeat such conduct. *Cf. State v. Sugar,* 100 N.J. 214, 495 A.2d 90, 97–98 (1985) (eavesdropping by police officers on telephone conversations between accused and his attorney); *United States v. Levy,* 577 F.2d 200 (3d Cir.1978) (knowing invasion of attorney-client relationship by government requires dismissal of indictment even without a showing of actual prejudice); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (defendant should not be required to prove specific prejudice in order to obtain relief for violation of guarantee of public trial).

Accordingly, I cannot vote to affirm the sentence. In view of appellant's pleas of guilty, the nature of the offenses, and the facts and circumstances surrounding them, I concur in affirming the findings. Considering the length of time this case has been under appellate review and the fact that the confinement imposed upon appellant has been served, I do not believe ordering a rehearing on sentence would offer any meaningful relief. I would therefore vote to disapprove the bad-conduct discharge. *See United States v. Hill,* 18 M.J. 757, 760 (A.C.M.R.1984).

**3.** Whether the rules of general prejudice should apply to knowing or intentional violations of Uniform Code of Military Justice Article 37, 10

U.S.C. § 837 (1982), was not decided in *Cruz. Cruz,* 20 M.J. at 886 n. 18.