UNITED STATES, Appellee,

v.

Private El Mark A. GHIGLIERI, 544–88–7436, United States Army, Appellant.

ACMR 8700312.

U.S. Army Court of Military Review.

30 Nov. 1987.

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Captain Alfred H. Novotne, JAGC, Captain David C. Hoffman, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Gary L. Hausken, JAGC (on brief).

Before ADAMKEWICZ, LYMBURNER, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

ADAMKEWICZ, Senior Judge:

Pursuant to his pleas, appellant was convicted of five specifications involving the making, passing, and transferring of counterfeit money (Charge I) and one specification of conspiracy to transfer counterfeit

currency (Charge II), in violation of Articles 134 and 81, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C.A. §§ 934, 881, respectively. On appeal before this court, the appellant alleges that the court-martial lacked both personal and subject-matter jurisdiction in this case.

■ With respect to the allegation of lack of service-connection, we find that the opinion of this court in *United States v. Starks,* 24 M.J. 857 (A.C.M.R.1987), is controlling, and that under *United States v. Solorio,* —— U.S. ——, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), service-connection is no longer necessary. The accused's status as a service-member is sufficient for court-martial jurisdiction. Further, the instant case is a companion case to that of *Starks* so that, even if *Solorio* is not applied retroactively to cases pending review, under the principles of service-connection, court-martial jurisdiction may be sustained. The appellant made the on-post agreement for the distribution of the counterfeit currency, transferred on-post the counterfeit currency to his co-conspirators with the intent that it be passed or used as genuine, and received on-post half the proceeds of the genuine currency given as change. While his printing of the money and the one transfer he personally committed occurred off-post, the military judge found these acts to be part of the appellant's "overall plan" to use the counterfeit bills and "essential steps to accomplish the accused's plan initially conceived ... at Fort Polk to counterfeit $20 bills and distribute them for his own purposes." We agree with these factual findings, which are fully supported by the record, and hold that there was service-connection sufficient to justify court-martial for these as well as the other charged offenses. *See Starks,* 24 M.J. at 859.

■ Appellant also contends that the court-martial had no personal jurisdiction over him. Prior to his enlistment, appellant appeared as a defendant in civilian criminal proceedings. On 4 December 1985, he was found guilty and then placed on unsupervised probation as an alternative to ninety days confinement, conditioned on his enlistment in the armed forces and payment of restitution. Appellant's father refused to help with restitution unless the appellant joined the military. The probation was suggested by the appellant through his civilian defense counsel and expired after completion of advanced individual training, i.e., upon his arrival at Fort Polk. The recruiter was advised of this probation but concealed it. On 1 April 1986, the appellant entered active duty. He completed basic training and advanced individual training and reported to his first assignment at Fort Polk on 27 July 1986. At some point thereafter, he told his supervisor of the circumstances of his enlistment but he did not then request discharge. Subsequent to his leave in October 1986, the appellant did request discharge but his reason for such a request was not because of the circumstances of his enlistment but because he did not like the Army and wanted to go to college.

The military judge found that the condition of appellant's probation was a non-waivable moral disqualification under Army Regulation 601–210, Personnel Procurement–Regular Army and Army Reserve Enlistment Program (30 Jan. 1987) [hereinafter AR 601–210][1] but that the appellant voluntarily entered the Army and served as a soldier. The military judge found that:

> from 1 April 1986 until at least November, 1986, the accused, (a) submitted voluntarily to military authority, (b) met the mental competency and minimum age qualifications at the time of his voluntary submission to military authority, and (c) he received military pay and performed military duties.

While prior case law suggests that no *in personam* jurisdiction would lie in a case such as this, *see United States v. Stone,* 8 M.J. 140 (C.M.A.1979); *United States v. Russo,* 1 M.J. 134 (C.M.A.1975) (recruiter

---

**1.** The same nonwaivable disqualification was in effect at the time of appellant's enlistment. *See* AR 601–210, Table 4–2, Line L (2 Jan. 1986).

misconduct combined with nonwaivable disqualification voids enlistment); *United States v. Catlow*, 48 C.M.R. 758 (C.M.A. 1974) (enlistment to avoid civilian charges is void), Article 2 of the UCMJ, 10 U.S.C.A. § 802 has been since revised.[2] Article 2(b) provides that "[t]he voluntary enlistment of any person who has the capacity to understand the significance of enlisting in the armed forces shall be valid for purposes of jurisdiction...." Article 2(c) states that "[n]otwithstanding any other provision of law," one who has voluntarily submitted to military authority, was mentally competent, met the minimum age requirement, received military pay or allowances and performed military duties is subject to the UCMJ until his active service has been terminated in accordance with regulation.

■ The new provisions of Article 2 have limited the application of prior decisions in voluntary enlistment cases. *See United States v. Buckingham*, 11 M.J. 184, 187 (C.M.A.1981) (Cook, J., concurring). "[I]f the enlistment alternative originates with the defendant or those properly acting for him, its acceptance by the court does not alone impart coercion to the enlistment." *United States v. Boone*, 10 M.J. 715, 720–21 (A.C.M.R.1981), *affirmed*, 15 M.J. 159 (C.M.A.1983) (citations omitted). *See also United States v. Lightfoot*, 4 M.J. 262 (C.M.A.1978); *United States v. Bachand*, 16 M.J. 896 (A.C.M.R.1983). Such is true in this case: the appellant originated the offer and thus it was not coerced. It was a voluntary choice on his part to enlist and subject himself to court-martial jurisdiction. Further, under the terms of the probation as the appellant described it, he was no longer subject to its conditions when he reported to Fort Polk in July, after which he continued to serve for several months, performing duties and collecting pay. Thus, even if the original enlistment was void, during this period of approximately three months, the appellant entered into a constructive enlistment under the provi-

sions of Article 2(c). *See Bachand*, 16 M.J. at 898.

■ Before leaving this matter, we would be remiss if we failed to note our grave concern that some public prosecutors and civilian judges are again accepting proposals for military service as an option to avoid prosecution or confinement for criminal offenses.[3] Armed service regulations preclude the military from accepting for service any individual against whom criminal charges are pending or against whom criminal proceedings have been dismissed or whose sentence has been suspended on condition that the individual enlist in the Armed Forces. *See generally* AR 601–210, para. 4–17 (11 Sep. 1987). The offering of such an alternative by these well-intentioned but misguided officials unwarrantably stigmatizes service in the Armed Forces and disparages the profession of arms.

■ We also note that the Staff Judge Advocate (SJA) failed to state whether any corrective action should be taken as a result of trial defense counsel's allegations of legal error made in his "Response to Recommendation of the Staff Judge Advocate and Request for Relief." Manual for Courts–Martial, 1984, Rules for Courts–Martial 1105 and 1106 [hereinafter R.C.M.]. Under some circumstances this failure may require a new recommendation and action. *See United States v. James*, 24 M.J. 397 (C.M.A.1987) (summary disposition); *United States v. Silva*, 23 M.J. 264 (C.M.A.1986) (summary disposition). R.C.M. 1106(d)(4) requires an SJA to state whether corrective action is necessary in response to allegations of legal error submitted by an accused under R.C.M. 1105. Trial defense counsel made a multi-paragraph submission to the convening authority. One paragraph responded to the SJA's recommendation and included allegations of legal error; another separate paragraph requested clemency. Assuming *arguendo* that the

---

2. Pub.L. No. 96–107, Section 801, 93 Stat. 810 (9 Nov. 1979).

3. *See Catlow*, 48 C.M.R. at 762–63 (appendix) (letter from The Judge Advocate General of the Army to Chief Justices of civilian courts requesting elimination of "forced volunteer" practice).

allegations of legal error were submitted under R.C.M. 1105 and required comment by the SJA, we find that the error in this case was not prejudicial. We have considered the allegations and find them to be without merit. We believe that this is an appropriate situation for this Court to utilize its power to take corrective action without returning the case for further action by a convening authority. *See generally United States v. Ricks,* 21 M.J. 569 (A.C.M. R.1985); *United States v. Keck,* 22 M.J. 755 (N.M.C.M.R.1986); R.C.M. 1106(d)(6).

Accordingly, the findings of guilty and the sentence are affirmed.

Judge LYMBURNER and Judge SMITH concur.