UNITED STATES, Appellee,

v.

Private E–2 Gregory E. JOHNSON, 432–35–9609, United States Army, Appellant.

ACMR 8701829.

U.S. Army Court of Military Review.

24 May 1988.

For Appellant: Major Eric T. Franzen, JAGC, Captain Scott A. Hancock, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain Eva M. Novak, JAGC (on brief).

Before FELDER, GILLEY, and ROBBLEE, Appellate Military Judges.

OPINION OF THE COURT

GILLEY, Judge:

Pursuant to his pleas, appellant was found guilty of one specification of using cocaine and three specifications of distributing cocaine in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (Supp.II

1985). The military judge sitting as a general court-martial sentenced appellant to a bad-conduct discharge, confinement for nine months, forfeiture of $300.00 pay per month for nine months, and reduction in grade to Private E-1. The convening authority approved the sentence.

## I

■■■ Appellant, personally and through counsel, contends first that the military judge erred to the substantial prejudice of the appellant by denying the trial defense counsel's motion to find the three distribution-of-cocaine specifications multiplicious for sentencing.[1] The government agrees that the "almost simultaneous distributions" should have been found multiplicious for sentencing. In determining whether these specifications are multiplicious for sentencing, it became apparent that they are one for findings as well. We so conclude, although multiplicity for findings was not assigned as error.

Appellant entered the barracks room of a friend where three soldiers were celebrating the birthday of one of them. Appellant drew cocaine from his pocket and asked them if they wanted "to do some coke." Private First Class Sartor expressed reluctance to use the cocaine, noting they could be caught by unit urine testing. Appellant then placed the cocaine on a mirror and "cut" it into four "lines". He rolled up a dollar bill and snorted one of the lines of cocaine through his nostrils. Next he placed the rolled-up dollar bill on the mirror and said, "whoever's going to do some go ahead, if you all don't use it then I will." Private First Class Brock, Private E-2 Hupp, and Private First Class Sartor then in turn "snorted" one of the lines of cocaine. The next day the commander had tested samples of urine obtained from these four soldiers during a unit inspection. The test results were positive for use of cocaine by each of these soldiers.

Substantially one transaction should not be the basis for an unreasonable multiplication of charges. Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [hereinafter M.C.M., 1984 and R.C.M., respectively] 307(c)(4) discussion. The appellant's actions were a "distribution" under the UCMJ as implemented by the M.C.M., 1984, rather than an incomplete distribution until each soldier inhaled cocaine. " 'Distribute' means to deliver to the possession of another. 'Deliver' means the actual, constructive, or attempted transfer of an item, whether or not there exists an agency relationship." M.C.M., 1984, Part IV, para. 37c(3). The source for this language is 21 U.S.C. § 802(8) and (11), M.C.M., 1984, App. 21, Analysis, para. 37(3), p. A21-95.[2]

Unlike the M.C.M., 1984, the U.S. Code does not require that distribution be a delivery "of possession." Nevertheless, we construe the military definition of distribution to include the transfer of possession by the sharing of control that occurred here. *United States v. Zubko,* 18 M.J. 378, 385 (C.M.A.1984) (possession includes shared control); M.C.M., 1984, Part IV, para. 37c(2). *See United States v. Sorrell,* 23 M.J. 122, 123 (C.M.A.1986) (delivery of drugs to unwitting agent sufficient for distribution; constructive transfer through mail also sufficient); *cf. United States v. Harclerode,* 17 M.J. 981, 983 (A.C.M.R. 1984) (separate specifications for theft

---

1. The military judge did treat the wrongful use of cocaine as multiplicious for sentencing with the wrongful distribution of cocaine.

2. The federal courts have construed this definition broadly. *See United States v. Brunty,* 701 F.2d 1375, 1381 (11th Cir.) (distribution includes transfer of constructive possession and arranging for delivery), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). Thus, an appellate court upheld a conviction for distribution by "attempted transfer" when a drug dealer placed bags of methaqualone tablets on a dresser, a police agent there to purchase the

drug saw them, and the agent planned to take them away when he returned to the room from an adjacent parking lot with money for drugs. *See also United States v. Tamargo,* 672 F.2d 887, 890 (11th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982); *United States v. Oropeza,* 564 F.2d 316, 322 (9th Cir.1977) (affirmed guilt of distribution by "attempted transfer" as a type of "delivery" when arrest of defendant prevented transfer of drugs in a controlled purchase), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978).

from a barracks room of property individually owned by two roommates unreasonably fragmented what was essentially one transaction).

Further, only one distribution occurred. Appellant in an indivisible sequence had given the three soldiers at one time control of the cocaine set before them. His pronouncements, coupled with (1) arranging the cocaine on the mirror for use, (2) providing them a rolled-up dollar bill with which to use it, and (3) placing the dollar bill and cocaine before them for use, provided them power over use of the cocaine. That the three soldiers' consumption or possible repudiations of this gift were necessarily individual does not in this context separate appellant's conduct into three distributions. See R. Brown, The Law of Personal Property, 79–84, 105 (W. Raushenbush 3d ed. 1975). Cf. United States v. Baker, 14 M.J. 361, 368 (C.M.A.1983); United States v. Williams, 22 M.J. 953, 955 (A.C.M.R.1986) (single offense occurred when appellant wrongfully possessed marijuana and lysergic acid diethylamide at the same time and place); United States v. Zupan, 17 M.J. 1039, 1041 (A.C.M.R.1984). But cf. United States v. Staples, 19 M.J. 741, 742 (A.F.C.M.R.1984) (giving an informant a bag containing 12.3 grams of marijuana and then dividing remaining marijuana with another airman properly the subject of separate specifications for distribution of marijuana found not multiplicious for findings). Unlike Staples, this appellant set out all the drugs at one time, not sequentially.

Trial defense counsel's failure to move for consolidation of these specifications does not preclude corrective action here. Waiver does not apply to multiplicity where the same offense has been unreasonably fragmented into two or more charges, as distinguished from whether they "fairly embrace" each other. United States v. Harclerode, 17 M.J. at 983. Cf. United States v. Holt, 16 M.J. 393, 394 (C.M.A. 1983) (plain error for courts to fail to dismiss multiplicious specifications where one was lesser included in the other and apparent from the specifications or so moved by accused at trial).

## II

The trial defense counsel asserted in appellant's petition to the convening authority for clemency that the military judge erred in denying a motion to consider the distribution of cocaine to be multiplicious for sentencing. The appellant contends prejudicial error occurred because the record does not contain the required statement by the staff judge advocate on whether corrective action should be taken regarding the asserted error. R.C.M. 1106(d)(4).[3] We find error in the failure by the staff judge advocate to respond, but this omission did not affect the convening authority's action. When a defense submission to the convening authority alleges a legal error regarding the findings or sentence, to comply with R.C.M. 1106(d)(4), the staff judge advocate must address the error. The error must be addressed even if asserted in a "petition for clemency" or submitted under R.C.M. 1106 when trial defense counsel has reviewed the staff judge advocate's recommendation with or without objections to it. See United States v. Thompson, 26 M.J. 512, 513 (A.C.M.R. 1988); A. Effron, "Post–Trial Submissions to the Convening Authority Under the Military Justice Act of 1983," The Army Lawyer, July 1984, at 59, 62.[4] This practice

3. R.C.M. 1106(d)(4) provides—
Legal errors. The staff judge advocate or legal officer is not required to examine the record for legal errors. However, when the recommendation is prepared by a staff judge advocate, the staff judge advocate shall state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate. The response may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal errors is not required.

4. We note that the R.C.M. 1105(b) submission by trial defense counsel was three days before waiver would have been imposed by the passage of ten days from service of the record of trial or the staff judge advocate's recommendation,

ensures the convening authority and accused have the advantage of the staff judge advocate's comment regarding the alleged legal error. *See* R.C.M. 1106(f)(7) (provides for addenda to staff judge advocate recommendations).

When this court addresses an R.C.M. 1105(b)(1) claim of legal error not responded to by the staff judge advocate, it need not necessarily return the case for further recommendation and action. *See United States v. Thompson,* 26 M.J. at 514 (Court of Military Review will test staff judge advocate's failure to comment and the issue raised for prejudice); *United States v. Ghiglieri,* 25 M.J. 687, 691 (A.C.M.R.1987). Rule for Courts–Martial 1105(b) describes matters which the accused may submit to the convening authority in terms of those "which *may reasonably tend to affect the convening authority's decision* whether to disapprove any findings of guilty or to approve the sentence" (emphasis added). Moreover, in acting on the sentence, "[t]he convening authority shall approve that sentence which is warranted by the circumstances of the offense and appropriate for the accused." R.C.M. 1107(d)(2). These Rules for Courts–Martial and the requirement for staff judge advocate comments on the merit of alleged legal errors *and* other matters he deems appropriate, R.C.M. 1106(d)(4), support the appellant's right for the convening authority to exercise in an informed manner his command prerogative, which could result in setting aside the findings or sentence or in mitigating actions. *See* Article 60(c), 10 U.S.C. § 860(c). However, absence of responsive advice by the staff judge advocate mandates return of cases for further consideration by the convening authority only if his taking favor-

able action as a matter of command prerogative would be plausible in view of that advice. This common sense approach was described by the Court of Military Appeals in *United States v. Smart,* 21 M.J. 15, 18 (C.M.A.1985), for the preceding system of post-trial review by a staff judge advocate.[5] The Court stated that the Court of Military Review may rule on relatively minor defects in post-trial reviews that involve only questions of law. In view of these standards, the practical, as well as legal test for "prejudice," used in *Thompson* and *Ghiglieri,* for failure of the staff judge advocate to comment on legal errors raised under R.C.M. 1105 or when otherwise appropriate, is whether the convening authority in exercising his command prerogative regarding legal errors or any information plausibly may have taken action more favorable to the accused had the staff judge advocate provided him additional written advice or information. *See United States v. Leininger,* 25 M.J. 746, 749 (A.C.M.R. 1987); R.C.M. 1105(b) and 1107(d)(2).[6]

Despite the large difference in the maximum confinement for one rather than for three distributions of cocaine, fifteen as opposed to forty-five years, we find the sentence adjudged and approved, including nine months confinement, was the minimum appropriate and that it would not have been less had the appellant been found guilty of or had the convening authority approved a finding of guilty of only one consolidated distribution, instead of three.[7] *See United States v. Sales,* 22 M.J. 305, 308–09 (C.M.A.1986) (in affirming sentence, court considered that sentence of six months confinement lenient in view of five

whichever is later. R.C.M. 1105(c)(1) (1987 amendment).

5. The Court noted in *United States v. Smart,* 21 M.J. at 18, that service on the trial defense counsel of the staff judge advocate's recommendation was similarly required by R.C.M. 1006(f)(1).

6. Some areas that may involve additional factual information, *see United States v. Smart,* 21 M.J. at 18, such as some cases of significant sentence disparity raised by the trial defense

counsel or appellant in closely related cases, predictably could be appropriate for return for written input from the staff judge advocate and a new action, depending on the facts of each case. This court, based on its experience, can readily discern such cases.

7. The pretrial agreement authorized the same maximum confinement as that adjudged. The staff judge advocate so noted and recommended that the convening authority approve the sentence.

years confinement that was imposable).[8] No aggravating matters were improperly before the military judge or convening authority. Further, the aggravating factors of wrongful distribution of cocaine to three soldiers on a military installation can be stated in a consolidated specification.[9] Accordingly, we find it implausible that the convening authority would have reduced or suspended any of this sentence, under Article 60(c), had he been properly advised by the staff judge advocate. Our findings under Article 66(c) and 59(a), 10 U.S.C. §§ 866(c), 859(a) regarding the sentence apply to its adjudgment by the military judge as well as to action upon it by the convening authority.

The findings of guilty of Specifications 2, 3, and 4 of the Charge are consolidated by changing all after "1 March 1987" in Specification 2 to read: "wrongfully distribute to Private First Class Kirk N. Brock, Private E–2 Jay P. Hupp, and Private First Class Jeffrey A. Sartor, each of whom is another military member, some amount of cocaine." The findings of guilty of Specification 1 of the Charge, and Specification 2 of the Charge, as consolidated, and the Charge are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the court affirms the sentence.

ROBBLEE, Judge, concurring in part and in result:

Appellant asserts, the government concedes, and I agree that his almost simultaneous distributions of cocaine were multiplicious for sentencing. *United States v. Christmas*, CM 447468 (A.C.M.R. 24 Oct. 1965) (unpub.), *petition denied*, 22 M.J. 272 (C.M.A.1986); *accord United States v. Williams*, 22 M.J. 953 (A.C.M.R.1986). I find it unnecessary, however, to address the unasked question of whether the specifications were multiplicious for findings.

I too believe that the staff judge advocate should have commented upon appellant's post-trial claim of legal error. Appellant's assertion that the military judge erred by refusing to consider the three distribution of cocaine specifications multiplicious for sentencing constitutes a proper R.C.M. 1105(b)(1) claim of legal error. The alleged error arose *during* trial, and the sentence may have been "affected" as a result. *Compare United States v. Johnston*, ACMR 8701303 (27 Apr. 1988) (unpub.) (no requirement for R.C.M. 1106(d)(4) comment on nontrial claim of legal error, *i.e.*, one not affecting the findings or sentence) (Robblee, J., dissenting); *compare also United States v. Harrison*, 26 M.S. 553 (A.C.M.R.1988) (absent R.C.M. 1105 allegations of legal error, no staff judge advocate duty to respond). Accordingly, the staff judge advocate was obligated to comment thereon. R.C.M. 1106(d)(4). The staff judge advocate's failure to comment, however, was not prejudicial because the appellant, through counsel and personally, brought the issue before the court for its independent disposition. *See United States v. Thompson*, 26 M.J. 512, 514 (A.C.M.R.1988).

FELDER, Senior Judge, concurring in part and dissenting in part:

I concur that the offenses are multiplicious for findings and would order the consolidation of the three specifications. However, I would not reassess the sentence. I would instead, return the case for further recommendation and action since the legal error, that the offenses were multiplicious for sentencing, raised by the trial defense counsel in his post-trial submission was not addressed in the staff judge advocate's recommendation to the convening authority. *See* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.], 1106(d)(4); *United States v. James*, 24 M.J. 397 (C.M.A.1987)

---

**8.** We have considered *United States v. Kinman*, 25 M.J. 99, 101 (C.M.A.1987), regarding erroneous admission of aggravating evidence by military judges, but do not find it to extend to errors by the military judge in computing maximum confinement.

**9.** Since all aggravating factors of this single transaction were presented to the convening authority, we find no prejudice that the matter was presented to him in three specifications instead of one.

(summary disposition); *United States v. Silva,* 23 M.J. 264 (C.M.A.1986) (summary disposition).

When weighing the procedural right of an accused to afford the convening authority the benefit of the staff judge advocate's advice on his allegation of legal error, against the minimal requirement that the staff judge advocate state whether he agrees or disagrees with the allegation, the equities favor the accused. Of course, the staff judge advocate is not limited in his response to a statement of agreement or disagreement, he may include any additional matters he deems appropriate. R.C.M. 1106(d)(4) and (5). The staff judge advocate certainly can take the time to respond whenever a defense counsel takes the pain to allege legal errors pursuant to R.C.M. 1105(b)(1), "which may reasonably tend to affect the convening authority's decision whether to disapprove any findings of guilty or to approve the sentence."

The accused is entitled to have the convening authority fully consider the merits of his allegation of error and that includes having the advice of the staff judge advocate to assist him in making judicial decisions. The staff judge advocate is best situated to advise the convening authority on the merits of an accused's legal contentions. The broad range of actions available to the convening authority under Article 60(c), Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 860(c), which are more extensive than those available to this court, allows him to take corrective action for any or no reason at all.[1] He need not test for prejudice as this court must do. I perceive that any error alleged by an accused that is not frivolous on its face "may reasonably tend to affect the convening authority's decision whether to disapprove any findings of guilty or to approve the sentence." Therefore, when as here, the appellant was sentenced to a nine-month term of confinement for three separate distributions of cocaine, I would allow the convening authority to use his command prerogative, supported by the opinion of the staff judge advocate, to fashion a sentence for one distribution of cocaine.

I cannot agree with my fellow judge that it was "implausible" for the convening authority to decide that since three distributions of cocaine justify nine months confinement, as determined by the military judge, one distribution may not require the same punishment. In other words, this court has determined the sentence that is appropriate under Article 66(c), UCMJ, 10 U.S.C. § 866(c), for one infraction of the law is also correct for three violations of the same law. That might be true but what may be correct for this court pursuant to Article 66(c) may not be correct for the convening authority pursuant to Article 60(c). Under the circumstances, this court should not substitute its opinion for the command prerogative of the convening authority.

I disagree with the positions taken in *United States v. Thompson,* 26 M.J. 512 (A.C.M.R.1988) and *United States v. Ghiglieri,* 25 M.J. 687 (A.C.M.R.1987), where this court tested for prejudice the failure of the staff judge advocate to respond to allegations of legal error. The prejudice test under Article 59(a), UCMJ, 10 U.S.C. § 859(a), cautions us not to hold incorrect a finding or sentence unless the error harms the substantial rights of the accused. The failure of the staff judge advocate to respond is not an error that impacts on the findings and sentence and the correction of that error by remand of the case for compliance does not disturb either the findings or sentence.

I also find misplaced the court's reliance on R.C.M. 1106(d)(6)[2] for not requiring a

---

1. Article 60(c), UCMJ, permits the convening authority to modify the findings and sentence of a court-martial as a matter of command prerogative. He may in his sole discretion dismiss any charge or specification; change a finding of guilty to an offense that is lesser included in the charge or specification; and approve, disapprove, commute, or suspend a sentence in whole or in part.

2. It provides that in case of error *in* the recommendation not otherwise waived by the failure of counsel for the accused to comment on the error in a timely manner, appropriate corrective action shall be taken by appellate authorities

new recommendation and action. The requirement for comment by the staff judge advocate cannot be swept away by the provision of R.C.M. 1106(d)(6), which permits appellate courts to deal with erroneous information *in* the body of the recommendation without remanding the case. The rule applies to errors committed in the preparation of the recommendation and the waiver of those errors by the defense counsel. The rule does not address the failure by the staff judge advocate to prepare a response. Obviously, a defense counsel cannot waive errors that he raised or errors in a response that was not prepared. R.C.M. 1106(d)(4) and (6) can be read consistently to give full benefit to the command prerogatives of the convening authority and also allow this court to review the effect of erroneous information contained *in* the recommendation. The holdings in *Thompson* and *Ghiglieri* do not foster compliance with the manual Rule by the staff judge advocate.

Although a convening authority is not *required* to review cases for legal errors or factual sufficiency, his action on the findings and sentence should be taken in the interest of justice. Therefore, when errors are called to his attention by the defense counsel, the convening authority should exercise his command prerogative to correct them. *See* R.C.M. 1107(b) discussion. He has the traditional powers to, in his sole discretion, order a rehearing, other trial or take necessary corrective measures as an expeditious means to rectify errors that are identified for him. *See* Article 60(e), UCMJ, 10 U.S.C. § 860(e); R.C.M. 1107(c) and (e) discussions. The Rules for Courts–Martial contemplate that a convening authority will correct injustices in his command and not pass them on to appellate courts.[3] The advice of the staff judge ad-

vocate is vital to the convening authority in the proper discharge of that responsibility.

---

without returning the case for further action by a convening authority.

**3.** I also disagree with the holding in *United States v. Blodgett*, 20 M.J. 756 (A.F.C.M.R.1985). There the court stated the convening authority is not required to take corrective action even in the event of apparent legal error in the trial. The "convening authority's action now serves the primary function, not of protecting the ac-

cused, but of protecting and maintaining the military commander's unique interest in discipline, morale, and his organization's ability to perform its mission." 20 M.J. at 758. Noticeably missing from that decision is the convening authority's interest in justice in his command. *See* R.C.M. 1107(b) discussion. Where there is injustice; discipline, morale and mission performance will certainly suffer.