# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39479**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Brian S. ARNOLD**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 November 2019

————————————

*Military Judge:* Christina M. Jimenez.

*Approved sentence:* Bad-conduct discharge, confinement for 20 months, and reduction to E-1. Sentence adjudged 20 March 2018 by GCM convened at Joint Base Charleston, South Carolina.

*For Appellant:* Major Todd M. Swensen, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Senior Judge J. JOHNSON delivered the opinion of the court, in which Judge KEY joined. Judge POSCH filed a separate opinion concurring in part and dissenting in part.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Senior Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of one specification of wrongful possession of child pornography in violation of

Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 20 months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises three issues on appeal: (1) whether the court-martial lacked jurisdiction to impose confinement on Appellant, a reservist, because Appellant's recall to active duty for trial was not properly authorized by the Secretary of the Air Force; (2) whether Appellant's conviction violated the Fifth Amendment's[2] Double Jeopardy Clause; and (3) whether Appellant is entitled to new post-trial processing due to errors in the post-trial process. We find the court-martial had jurisdiction over Appellant and his conviction was not constitutionally barred, but we find that post-trial errors do require new post-trial processing and action.

## I. BACKGROUND

Appellant was a reservist attached to a security forces squadron located at Joint Base Charleston, South Carolina, where he regularly attended monthly unit training assemblies. Appellant exercised exclusive control of a Government-issued external hard drive that he used for work related to his official duties. Appellant's unit permitted him to take the hard drive to his home in Union County, North Carolina, to accomplish work while he was not on Air Force orders. In 2014 and 2015, Appellant took the hard drive home with him approximately seven or eight times.

In June 2015, as Appellant was preparing to retire from the Air Force, he returned the government hard drive to his unit. Other members of the unit subsequently found child pornography on the hard drive, and took it to the Air Force Office of Special Investigations (AFOSI). The Defense Computer Forensics Laboratory (DCFL) analyzed the hard drive and identified three videos of known child pornography; in addition, DCFL classified four other videos as "possible" child pornography.

On 29 June 2015, an AFOSI agent traveled to North Carolina and interviewed Appellant in conjunction with local civilian law enforcement. Following this interview, local law enforcement agents seized Appellant's personal laptop

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] U.S. CONST. amend. V.

computer, on which they found multiple images and videos of child pornography. Based on these images and videos, Appellant was charged in North Carolina with two counts of second degree sexual exploitation of a minor.[3] Although Appellant had connected the Air Force hard drive to the computer seized in North Carolina, none of the images of child pornography found on the Air Force hard drive were among those charged by civilian authorities.

On 25 October 2016, while Appellant's state charges were pending, the 628th Air Base Wing (628 ABW) commander signed a "Request for Secretary of the Air Force Approval" to order Appellant to active duty for trial by court-martial. The request was addressed to the Air Force Expeditionary Center commander, the general court-martial convening authority (GCMCA). The request explained that because Appellant was a reservist, "Secretary of the Air Force approval of the order is necessary to authorize execution of any adjudged sentence to confinement if [Appellant] is tried by court-martial." Among other information, the request stated Appellant had "no prior convictions or nonjudicial punishment actions."

On 3 November 2016, Appellant pleaded guilty in a North Carolina superior court to a reduced charge of third degree aiding and abetting the sexual exploitation of a minor.[4] As a result, Appellant was sentenced to a term of 6 to 17 months in confinement, suspended pending successful completion of 24 months of supervised probation, at which point any remaining portion of the sentence would be remitted.

A day later, on 4 November 2016, the 628 ABW staff judge advocate (SJA) signed a legal review of the 628 ABW commander's request for secretarial approval. The legal review "f[ou]nd the proposed recall legally sufficient," and recommended that the case be prosecuted at Joint Base Charleston. Although the legal review, like the commander's request itself, mentioned civilian law enforcement's involvement in the investigation, neither mentioned Appellant's civilian prosecution in North Carolina.

On 8 December 2016, the GCMCA requested that the Secretary of the Air Force (Secretary) approve Appellant's recall to active duty to stand trial. A staff summary sheet dated 15 February 2017 that circulated the GCMCA's request among various offices prior to the Secretary's review reiterated, *inter alia*, that Appellant "has no prior criminal convictions." On 7 April 2017, the acting Secretary approved "any recall to active duty of [Appellant] that [the GCMCA] ha[d] ordered or may hereafter order." On 5 May 2017, Appellant's squadron commander preferred one charge and specification against Appellant, alleging

---

[3] *See* N.C. GEN. STAT. § 14-190.17 (2008).

[4] *See* N.C. GEN. STAT. § 14-190.17A (2008).

wrongful possession of child pornography between on or about 1 August 2012 and on or about 7 June 2015 in violation of Article 134, UCMJ.

Before trial, the Defense moved to dismiss the Charge and its Specification on the basis, *inter alia*,[5] that North Carolina had already tried Appellant for the same criminal act of possessing child pornography, and the Government had not complied with certain provisions of Air Force Instruction (AFI) 51-201, *Administration of Military Justice* (6 Jun. 2013, as amended by AFGM 2016-01, 3 Aug. 2016),[6] that applied in such circumstances. Specifically, the Defense asserted the Government had not "coordinated" its intent to try Appellant with either the State of North Carolina or the State of South Carolina. In addition, the Defense asserted the request for secretarial approval was based solely on the authorization to execute any sentence to confinement; it failed to acknowledge Appellant's impending court-martial was a second prosecution for the same offense, which would require the Secretary to determine such a prosecution was necessary because "the ends of justice and discipline can be satisfied in no other way." The Government opposed the Defense's motion on two bases: (1) the State of North Carolina and the Government had charged different images obtained from different devices, and therefore had not charged the same offense; and (2) the elements of the offenses charged by North Carolina and by the Government were different, and therefore the offenses were different.

In a written ruling, the military judge denied the Defense's motion to dismiss. She found the Charge and its Specification pending trial by court-martial "distinguishable" from the charge prosecuted in North Carolina because the images in each case were obtained from different devices, and there was "no evidence the laptop contained the videos before this court." Therefore, the current court-martial was not a second prosecution for the same offense that required secretarial approval in accordance with AFI 51-201. Because there was also no indication of a "pending trial" in either North Carolina or South Carolina for the offense that was before the court-martial, there was no violation of any other provision of AFI 51-201. Furthermore, assuming *arguendo* there had

---

[5] The Defense also alleged Appellant's due process right to a speedy trial had been violated, but Appellant has not raised that issue on appeal.

[6] Unless otherwise noted, all references in this opinion to AFI 51-201 are to this version of the AFI, which was in effect at the time the acting Secretary approved Appellant's recall to active duty for trial.

been a violation of the instruction, the military judge found the relevant policies set forth in AFI 51-201 did not create additional rights for an accused, and therefore any regulatory violation did not have "jurisdictional effect."[7]

Immediately after the military judge entered her ruling, Appellant entered an unconditional guilty plea to the Charge and its Specification pursuant to a PTA.

## II. DISCUSSION

### A. Jurisdiction

Appellant contends the court-martial lacked jurisdiction to sentence him to confinement because the Secretary's approval of his recall to active duty for trial was defective. We disagree.

#### 1. Law

We review questions of court-martial jurisdiction de novo. *United States v. Hale*, 78 M.J. 268, 270 (C.A.A.F. 2019) (citing *EV v. United States*, 75 M.J. 331, 333 (C.A.A.F. 2016)). "When challenged, the government must prove jurisdiction by a preponderance of evidence." *Id.* (citing *United States v. Morita*, 74 M.J. 116, 121 (C.A.A.F. 2015)). We also review questions of statutory and regulatory interpretation de novo. *United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016) (citing *United States v. Vargas*, 74 M.J. 1, 5 (C.A.A.F. 2014)); *United States v. Watson*, 69 M.J. 415, 419 (C.A.A.F. 2011) (citing *United States v. Estrada*, 69 M.J. 45, 47 (C.A.A.F. 2010)).

"Generally, there are three prerequisites that must be met for courts-martial jurisdiction to vest: (1) jurisdiction over the offense, (2) jurisdiction over the accused, and (3) a properly convened and composed court-martial." *United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012) (citing Rule for Courts-Martial (R.C.M.) 201(b); *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006)). A GCMCA may order a member of a reserve component to active duty involuntarily for the purpose of trial by court-martial. Article 2(d)(1), (4), UCMJ, 10 U.S.C. § 802(d)(1), (4). However, such a reservist may not be sentenced to confinement unless his recall was "approved by the Secretary concerned." Article 2(d)(5), UCMJ, 10 U.S.C. § 802(d)(5). "The Secretary concerned shall prescribe regulations setting forth rules and procedures for the exercise of court-martial

---

[7] The military judge's ruling referred to the 8 December 2017 version of AFI 51-201, in effect at the time of Appellant's trial although not at the time the acting Secretary approved Appellant's recall. Although the 8 December 2017 version significantly reorganized the order of paragraphs within the regulation, the content of the pertinent provisions remained substantially the same as the previous version.

jurisdiction . . . over reserve component personnel under Article . . . 2(d), subject to the limitations of [the *Manual for Courts-Martial, United States*] and the UCMJ." R.C.M. 204(a).

AFI 51-201 articulates several policies with regard to bringing Air Force reserve personnel to trial by court-martial. Relevant to Appellant's case, AFI 51-201, ¶ 2.9.5 provides in pertinent part:

> A Reserve . . . member recalled to active duty for court-martial without [secretarial] approval may not be sentenced to confinement or be required to serve a punishment consisting of any restriction on liberty during the recall period of duty. See Article 2(d)(5), UCMJ. . . . Requests for [secretarial] approval to recall a reserve member for court-martial to preserve the possibility that the sentence may include confinement are forwarded, via command channels, to AFLOA/JAJM [Air Force Legal Operations Agency Military Justice Division]. Generally, requests should be made prior to preferral of charges, but, in any case, must be approved prior to arraignment. The GCMCA must concur in the request and the request shall include as a minimum, the following information:
>
> . . . .
>
> . . . Prior convictions and nonjudicial punishments.

AFI 51-201 also articulates policies with respect to court-martial jurisdiction in cases "involving state or foreign prosecution interest." AFI 51-201, ¶ 2.6. In particular, ¶ 2.6.1 provides, *inter alia*:

> When a member is subject to both UCMJ and state or foreign jurisdiction for substantially the same act or omission, the determination of which sovereign shall exercise jurisdiction should be made through consultation or prior agreement between appropriate Air Force and civilian authorities. RCM 201(d). If a state or foreign authority's exercise of jurisdiction will not meet/or [sic] has not met the ends of good order and discipline, it may be appropriate to seek permission from [the Secretary] to exercise UCMJ authority. . . . Except as discussed in paragraph 2.6.3. [regarding secretarial approval], a member who is either pending trial or has been tried by a state or foreign court, regardless of whether the member was convicted or acquitted of the offense(s), should not ordinarily be tried by a court-martial . . . for the same act or omission. *This policy is based on comity between the Federal Government and state and foreign governments and is not intended to confer additional rights upon the*

*accused. See United States v. Kohut*, 44 M.J. 245, 247 (C.A.A.F. 1996) . . . .

(Emphasis added.) Relatedly, ¶ 2.6.3 provides, *inter alia*:

Only [the Secretary] may approve initiation of court-martial . . . action against a member previously tried by a state or foreign court for substantially the same act or omission, regardless of whether the member was convicted or acquitted of the offense(s). These requests may only be submitted after the member has been tried in a state or foreign court. Submit requests, with full justification, through command channels to AFLOA/JAJM. [Secretarial] approval will be granted in only the most unusual cases when the ends of justice and discipline can be satisfied in no other way.

"[P]olicy typically is not *law*. . . . [E]ven a regulation—which, as a general rule, often is said to bind the authority that promulgates it . . . may be asserted by an accused only if it was prescribed to protect an accused's rights." *United States v. Sloan*, 35 M.J. 4, 9 (C.M.A. 1992) (footnote omitted) (citations omitted), *overruled in part on other grounds by United States v. Dinger*, 77 M.J. 447 (C.A.A.F. 2018). An appellate court is "not justified in attaching jurisdictional significance to service regulations in the absence of their express characterization as such by Congress." *Kohut*, 44 M.J. at 249 (quoting *United States v. Jette*, 25 M.J. 16, 18 (C.M.A. 1987)).

### 2. Analysis

Essentially, Appellant contends the acting Secretary's approval of his recall to active duty for trial was defective in two respects. First, he argues that because North Carolina had tried him for the "same act" for which he was to be tried by court-martial, AFI 51-201, ¶ 2.6.3 required the acting Secretary to make a determination that his case was one of the "most unusual cases" that additionally required military prosecution because "the ends of justice and discipline [could] be satisfied in no other way." However, Appellant contends, the acting Secretary could not have performed this analysis because she was not informed that North Carolina had already prosecuted Appellant for this "same act." Second, Appellant argues the Government also failed to fulfill the requirements of AFI 51-201, ¶ 2.9.5, because the request incorrectly advised the acting Secretary that Appellant had no prior convictions. That had been true when the 628 ABW commander signed his initial request on 25 October 2016, but was no longer true after Appellant's conviction in North Carolina on 3 November 2016. Appellant suggests that these were material deficiencies because, had the acting Secretary known of Appellant's state prosecution, she may not have authorized a second prosecution by the Air Force. Appellant concludes

that because there was no valid secretarial approval, under Article 2(d)(5), UCMJ, the court-martial lacked jurisdiction to sentence him to confinement. However, we find Appellant's arguments to be flawed in several respects.

First, we agree with the military judge that Appellant was not in fact tried twice for the "same act." The State of North Carolina prosecuted Appellant based on images of child pornography that it discovered on the laptop computer it seized from his residence. The Government prosecuted Appellant for possessing different images of child pornography that it discovered on his Air Force-issued hard drive. When Appellant pleaded guilty at his court-martial, he stipulated to the fact that "[n]one of the charged images in North Carolina found on his personal laptop were any of the images . . . found on the government hard drive." Accordingly, Appellant's possession of the external hard drive containing child pornography was a distinct crime from his concurrent possession of his personal laptop computer containing different child pornography. *See United States v. Forrester*, 76 M.J. 389, 396–97 (C.A.A.F. 2017) (concluding that Article 134, UCMJ, was "intended to separately criminalize and punish possession of each 'material that contains' child pornography").

Second, even if there had been overlap between the images of child pornography prosecuted in North Carolina and at Appellant's court-martial, under *Forrester* Appellant's possession of the computer and of the hard drive were still "distinct criminal acts of possession." *Id*. at 397. In *Forrester*, the United States Court of Appeals for the Armed Forces (CAAF) explained that "[b]ecause pt. IV, para. 68b [of the *Manual for Courts-Martial*] defines '[c]hild [p]ornography' not as images but 'material[s]' that contain them, it matters not that the images extant on each material listed in the bill of particulars were visually similar or identical for each count of possession." *Id*. at 396 (third, fourth, and fifth alterations in original). Therefore, the CAAF found, Corporal Forrester could be separately charged and separately punished for four separate specifications of possession of child pornography, where he possessed four different devices containing child pornography, irrespective of whether the same images were on each device. *Id*. at 397. We perceive no basis to apply a different analysis to the question of whether an Airman has been tried by a state for "substantially the same act or omission" for purposes of AFI 51-201, ¶ 2.6.1 and ¶ 2.6.3.

Third, assuming *arguendo* the Government had failed to comply with AFI 51-201, ¶ 2.6.3, such noncompliance was without jurisdictional significance. *See Kohut*, 44 M.J. at 249. In general, an accused or an appellant may assert noncompliance with a regulation only if the regulation was prescribed in order to protect an accused's rights. *Sloan*, 35 M.J. at 9 (citations omitted). In this case, AFI 51-201, ¶ 2.6.1 explicitly denies that the purpose of the Air Force policy against prosecuting an Airman who has already been prosecuted by a

state or foreign court for the same offense was to create rights for an accused. Significantly, ¶ 2.6.1 expressly refers to the secretarial approval requirement under ¶ 2.6.3, implying ¶ 2.6.3 was similarly not intended to give standing to an accused. Moreover, this court previously found ¶ 2.6.3—in an earlier version of AFI 51-201 with substantially similar language—in fact had no jurisdictional effect in our unpublished opinion in *United States v. Grafmuller*, No. ACM 37524, 2011 CCA LEXIS 335, at *17–19 (A.F. Ct. Crim. App. 30 Mar. 2011) (unpub. op.) (citing AFI 51-201, *Administration of Military Justice*, ¶ 2.6.3. (21 Dec. 2007)), *rev'd on other grounds*, 70 M.J. 356 (C.A.A.F. 2011). Relying on *Kohut* and *Jette*, this court concluded ¶ 2.6.3 "is a matter of policy rather than jurisdiction," and therefore any noncompliance was waived by the appellant's unconditional guilty plea. *Id.* at *18 (citing *Kohut*, 44 M.J. at 250; *Jette*, 25 M.J. at 18; *United States v. Lippoldt*, 34 M.J. 523, 525 (A.F.C.M.R. 1991)); *accord United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018) (citations omitted) (holding an unconditional guilty plea generally waives all non-jurisdictional defects at earlier stages of the proceedings). We reach a similar conclusion in Appellant's case.

Fourth, although it appears the Government did fail to comply with the requirement in AFI 51-201 ¶ 2.9.5 that a request for secretarial approval include information as to whether the individual has any "prior convictions," we find this noncompliance was also without jurisdictional effect. This court addressed a similar issue in our unpublished decision in *United States v. Dutton*, No. ACM S32002, 2013 CCA LEXIS 483, at *6 (A.F. Ct. Crim. App. 5 Jun. 2013) (unpub. op.) (per curiam). In that case, we reviewed the convictions of an Air National Guardsman whose recall to active duty the Secretary approved pursuant to a request that omitted certain information required by AFI 51-201, ¶ 2.9.5. *Id.* at *3–6. Again relying on *Kohut*, this court found "this failure did not affect the jurisdiction of the court-martial to impose confinement, as we find this part of the AFI to be a matter of policy rather than jurisdiction." *Id.* at *6–7 (citing *Kohut*, 44 M.J. at 250; *Sloan*, 35 M.J. at 9; *United States v. Hutchins*, 4 M.J. 190, 192 (C.M.A. 1978)). Because the Secretary approved the appellant's recall, the jurisdictional requirements of Article 2(d), UCMJ, were met, and the appellant could be lawfully sentenced to confinement. *Id.* at *6. We find our decision in *Dutton* well-founded in the CAAF's established precedent, and we reach a similar conclusion in Appellant's case.

## B. Double Jeopardy

### 1. Law

"No person shall be . . . subject for the same offence to be twice put in jeopardy . . . ." U.S. CONST. amend. V; *see also* Article 44(a), UCMJ, 10 U.S.C. § 844(a) ("No person may, without his consent, be tried a second time for the same offense.").

However, the United States Supreme Court has "long held that a crime under one sovereign's laws is not 'the same offence' as a crime under the laws of another sovereign." *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019). Under the Court's longstanding "dual-sovereignty" doctrine, the Government may prosecute a defendant under a federal statute even if a state has already prosecuted him for the same conduct under state law, and vice versa. *Id*. The CAAF has applied the dual-sovereignty doctrine to court-martial proceedings. *See United States v. Delarosa*, 67 M.J. 318, 321 (C.A.A.F. 2009) (citing *Heath v. Alabama*, 474 U.S. 82, 89 (1985)) (additional citations omitted).

### 2. Analysis

Appellant contends this court should dismiss the findings and sentence with prejudice because he was prosecuted twice for the same offense of possessing child pornography, in violation of the Fifth Amendment's Double Jeopardy Clause. We disagree. Appellant's argument suffers from two fundamental and fatal flaws.

First, as we have explained above, the State of North Carolina and the Government prosecuted Appellant for two distinct acts of possessing child pornography, specifically the possession of two different sets of images contained on two different devices. *See Forrester*, 76 M.J. at 396–97. Thus he was not prosecuted twice for the "same offense," and the conviction before us does not implicate the Double Jeopardy Clause.

Second, the United States Supreme Court recently reaffirmed its longstanding adherence to the dual-sovereignty doctrine in *Gamble*, 139 S. Ct. at 1964, which was decided after Appellant filed his Assignments of Error in the instant case. Therefore, even if the state and the Government had prosecuted Appellant for the same act of possessing child pornography (which they did not), he was not convicted twice for the "same offense" in a constitutional sense.

To the extent Appellant suggests that unique aspects of the military justice system require that the dual-sovereignty doctrine exert less force in the context of trials by courts-martial, he cites no decision of the Court, of the CAAF, of this court, or of any other court in support of such an exemption from established constitutional doctrine. On the contrary, the CAAF has plainly found the doctrine applicable to courts-martial. *See Delarosa*, 67 M.J. at 321; *United States v. Stokes*, 12 M.J. 229, 230 (C.M.A. 1982).

Accordingly, the Double Jeopardy Clause was no bar to Appellant's conviction.

### C. Post-Trial Process

### 1. Additional Background

10

After trial, the acting SJA for the convening authority, Major (Maj) BA, prepared a staff judge advocate's recommendation (SJAR) which provided, *inter alia*, the following advice:

> For the charge and its specification, you only have the authority to approve the finding of guilt and cannot dismiss the finding of guilt.
>
> . . . .
>
> . . . I recommend you approve the 20 months of adjudged confinement, as that duration of confinement falls within the terms of the pretrial agreement. Accordingly, you do not have the authority to disapprove, commute or suspend, in whole or in part, the confinement or punitive discharge. However, you do have the authority to disapprove, commute or suspend in whole or in part the reduction in rank. . . . I recommend you approve the confinement, punitive discharge, and reduction in rank as adjudged.

Pursuant to R.C.M. 1105, trial defense counsel submitted, *inter alia*, a memorandum on Appellant's behalf for the convening authority's consideration before taking action on the court-martial. Trial defense counsel failed to object to or to correct any erroneous advice in the SJAR. On the contrary, trial defense counsel stated, *inter alia*:

> [Appellant] is devastated that he cannot be there to support both his mother and step-father [who was recently diagnosed with throat cancer], who he is very close to, and hopes to still have time with his step-father upon his release from confinement. He wishes he could request that his confinement sentence be reduced so he can be reunited with his family during this difficult period. Unfortunately, due to the Congressional changes to UCMJ Article 60, we know that you do not have that power. Base[d] on your authority, the only real impact you are able to make on [Appellant]'s sentence is to approve a lesser reduction in rank, which is what we are requesting here.
>
> . . . .
>
> . . . [P]lease consider granting him clemency in the form of only approving a reduction in grade to the grade of E-4, rather than the adjudged reduction to E-1.

The addendum to the SJAR, signed by the SJA, failed to address any errors in the SJAR or the clemency submission, and concurred with the previous recommendation to approve the adjudged sentence. The convening authority approved the sentence as adjudged.

**2. Law**

"The proper completion of post-trial processing is a question of law the court reviews de novo." *United States v. Zegarrundo*, 77 M.J. 612, 613 (A.F. Ct. Crim. App. 2018) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)), *rev. denied*, __ M.J. __ , No. 19–0407, 2019 CAAF LEXIS 741 (C.A.A.F. 8 Oct. 2019). Failure to comment in a timely manner on matters in or attached to the SJAR forfeits a later claim of error; we analyze such forfeited claims for plain error. *Id.* (citations omitted). "To prevail under a plain error analysis, Appellant must persuade this Court that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65) (additional citation omitted). "To meet this burden in the context of a [SJAR] error, whether that error is preserved or is otherwise considered under the plain error doctrine, an appellant must make 'some colorable showing of possible prejudice.'" *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65).

The National Defense Authorization Act (NDAA) for Fiscal Year 2014 modified Article 60, UCMJ, 10 U.S.C. § 860, and limited the convening authority's ability to grant clemency. Pub. L. No. 113–66, § 1702, 127 Stat. 672, 955–58 (2013). The effective date of the change was 24 June 2014. *Id.* at 958. However, where a court-martial conviction involves an offense committed before 24 June 2014 or includes a date range where the earliest date in the range for that offense is before 24 June 2014, the convening authority has the same authority under Article 60 as was in effect before 24 June 2014, except with respect to a mandatory minimum sentence under Article 56(b), UCMJ, 10 U.S.C. § 856(b). Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113–291, § 531, 128 Stat. 3292, 3365 (2014). In such cases the convening authority retains the authority to set aside any finding of guilty or to change it to a finding of guilty to a lesser included offense, to disapprove or mitigate the sentence in whole or in part, or to change a punishment to one of a different nature so long as the severity is not increased. Exec. Order 13,730, 81 Fed. Reg. 33,331 (26 May 2016).

**3. Analysis**

The legal advice in the SJAR provided to the convening authority was plainly erroneous. The date of the offense of which Appellant was convicted "straddles" 24 June 2014, the effective date of the changes to Article 60, UCMJ. Therefore, contrary to the advice in the SJAR, the convening authority in this case had the power to set aside the findings of guilty and the power to disapprove, mitigate, or modify the sentence in whole or in part. The advice in the SJAR that the convening authority could not modify the findings or the adjudged confinement or punitive discharge, uncorrected and repeated by the SJA in the addendum, was simply wrong.

A related but distinct error was the SJA's failure to address trial defense counsel's evident misunderstanding of the convening authority's clemency authority. Trial defense counsel explicitly—and erroneously—conceded that the changes to Article 60, UCMJ, did not allow the convening authority to grant the reduction in confinement that Appellant desired and that the Defense otherwise would have requested. In *Zegarrundo*, we found that a SJA's failure to correct a defense counsel's erroneous advice in a clemency submission that the convening authority lacked the power to disapprove confinement—even where the SJAR itself contained correct advice—was plain error. 77 M.J. at 614; *see United States v. Addison*, 75 M.J. 405 (C.A.A.F. 2016) (mem.). This case presents a similar situation, exacerbated by the incorrect advice provided in the SJAR itself.

The Government concedes the error, but attempts to distinguish this case from cases such as *Zegarrundo* because, it asserts, we can be sure this error "had no impact on either the SJA's recommendation or the convening authority's action." To this end, the Government has submitted declarations from Maj BA, the acting SJA who signed the erroneous SJAR, and the convening authority who took action on Appellant's court-martial.[8]

Maj BA acknowledges that the SJAR contained erroneous advice with respect to the convening authority's power to modify the findings and sentence. However, Maj BA asserts that, had he been aware of the convening authority's power to grant clemency, his recommendation would have remained the same because the sentence was "appropriate" and the 20-month term of confinement matched the cap on confinement the Appellant and convening authority agreed to in the PTA. Furthermore, Maj BA relates that because trial defense counsel conveyed in her memorandum that the Defense would have requested a reduction in confinement had she believed it was authorized, Maj BA "recall[ed] discussing it" with the convening authority.

The convening authority states that even if he had been correctly advised as to the scope of his clemency authority, his "decision would not have changed." He explains:

> I carefully considered the matters submitted by [Appellant], including an assertion from his defense counsel that if greater clemency options existed, [Appellant] would have requested I reduce his confinement. Although I believed at the time I did not have the authority to reduce the sentence to confinement, I recall thinking about the defense counsel's statement, and con-

---

[8] The convening authority has since retired from the Air Force.

cluding that the adjudged sentence was appropriate, in part because the adjudged sentence included the same amount of confinement as was negotiated in the pre-trial agreement. . . . I am confident I would have reached this conclusion even if I was made aware at the time that I could have taken other action.

We do not doubt the sincerity or good faith of either Maj BA or the convening authority. However, we are not persuaded by the Government's argument. In this case, everyone involved in the post-trial process fundamentally misunderstood the "vast" and highly discretionary power available to the convening authority to grant clemency in Appellant's case. *See Scalo*, 60 M.J. at 437. To permit post hoc speculation, however sincere, to vitiate an appellant's right to request and a convening authority's power to decide clemency, on an informed and meaningful basis, imposes too great a burden on the integrity and appearance of fairness of the military justice system—at least in the particular circumstances of this case.

In *Zegarrundo*, we found the trial defense counsel's erroneous statement that the convening authority could not disapprove confinement, the correspondingly limited scope of the clemency request, and the SJA's failure to correct the defense's error constituted a "colorable showing of possible prejudice"—regardless of any proffer of an alternative defense clemency submission. 77 M.J. at 614. Each of those factors is also present here, greatly aggravated by the SJA's own provision of erroneous advice, which more than outweighs the fact that the convening authority "thought about" confinement in the context of this fundamentally flawed process. Therefore, we direct a new post-trial process and action.[9]

## III. CONCLUSION

The action of the convening authority is **SET ASIDE**. The record of trial is returned to The Judge Advocate General for remand to the convening authority for new post-trial processing with conflict-free defense counsel consistent with this opinion. Article 66(e), UCMJ, 10 U.S.C. § 866(e). Thereafter, the record of trial will be returned to this court for completion of appellate review under Article 66, UCMJ.

---

[9] We further note the convening authority's action dated 6 June 2018 states Appellant is to "be credited with four days for illegal pretrial confinement against the sentence to confinement." Although the military judge awarded Appellant credit for four days during which he was confined by civilian authorities following his 29 June 2015 interview, the military judge did not find this confinement was illegal, and the convening authority's reference to "illegal pretrial confinement" was erroneous.

POSCH, Judge (concurring in part and dissenting in part):

I agree with my esteemed colleagues in the majority on the resolution of Appellant's first and second assigned errors and would affirm the findings of guilty, in accordance with Appellant's pleas pursuant to a pretrial agreement (PTA), of wrongful possession of child pornography in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. However, I respectfully dissent with regard to the majority's conclusion that the post-trial errors require new post-trial processing and action.

As found by the majority, the acting staff judge advocate (ASJA) misadvised the convening authority, the trial defense counsel operated under an erroneous view of the law and failed to correct the ASJA's advice, and the staff judge advocate failed to address any of these errors in his addendum. I agree. Whether an appellant was prejudiced requires that we consider whether the convening authority "plausibly may have taken action more favorable to" the appellant had the convening authority been provided accurate or more complete information. *United States v. Johnson*, 26 M.J. 686, 689 (A.C.M.R. 1988), *aff'd*, 28 M.J. 452 (C.M.A. 1989) (mem.); *see also United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996).

"[I]n the context of a post-trial recommendation error," which plainly occurred here, "an appellant must make 'some colorable showing of possible prejudice,'" *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)), to meet his "burden to establish that the error materially prejudiced a substantial right." *Id.* at 436. I am not persuaded that Appellant has met his burden even with the "low threshold for material prejudice." *See id.* at 437 (citation omitted).

Appellant was sentenced to 20 months of confinement after pleading guilty on the condition that the convening authority would not approve confinement that exceeded 20 months. In clemency, Appellant stated he wished the confinement could be reduced so that he could be reunited with his family. The convening authority who approved this PTA condition and took action on Appellant's sentence submitted a declaration recalling that he believed at the time that "the adjudged sentence was appropriate, in part because the adjudged sentence included the same amount of confinement as was negotiated in the pre-trial agreement." And, at action, the convening authority believed the adjudged sentence was appropriate, that it was "reasonable based upon the offense and the record of trial," and he was confident he would have reached the same conclusion even if he was made aware that he could have taken other action. Recalling trial defense counsel's assertion that Appellant would have requested the convening authority to reduce the confinement if he had such

authority, the convening authority declared, his "decision would not have changed." Upon consideration of Appellant's clemency submission, the convening authority approved the sentence as adjudged. His declaration states that he considered Appellant's desire for reduced confinement at the time he took action, and though he erroneously believed he did not have that authority, nevertheless concluded that 20 months of confinement was appropriate.

The majority is mostly dismissive of the convening authority's uncontested declaration, attributing consideration of it to unwarranted post hoc speculation, and cautions that this court's reliance on such a declaration places too great a burden on integrity and the appearance of fairness. I am not similarly dismissive. Taken as a whole, the declaration did not demonstrate an inelastic predisposition to approve a sentence to confinement that was the same as the limitation in the PTA. Nor is it cause to conclude that Appellant would have fared better had the convening authority been properly advised. Rather, I take from his declaration, and the ASJA's, that based on what the convening authority knew about Appellant's case at the time he took action, if he had been properly advised of his authority, he would have approved the sentence as adjudged because he believed the sentence was appropriate.

Unlike the action our court set aside in *United States v. Zegarrundo*, 77 M.J. 612, 613 (A.F. Ct. Crim. App. 2018), *rev. denied*, ___ M.J. ___, No. 19–0407, 2019 CAAF LEXIS 741 (C.A.A.F. 8 Oct. 2019), because a colorable showing of prejudice was established from procedural errors like these, in the case at hand it is evident from post-trial declarations that Appellant was not prejudiced. Taking the convening authority at his word, and because Appellant provides no new information on appeal, I conclude it was not plausible the convening authority may have taken more favorable action had he been provided accurate information about his full power to grant clemency. *See Johnson*, 26 M.J. at 689. As Appellant has not demonstrated a colorable showing of possible prejudice, *see Scalo*, 60 M.J. at 436–37, I would not set aside the action but would instead affirm the sentence as adjudged and approved by the convening authority.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court