# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32566**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Dillon R. WISEMAN**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 August 2020

———————————

*Military Judge:* Jennifer E. Powell (motions); John C. Degnan.

*Approved sentence:* Bad-conduct discharge, confinement for 40 days, and reduction to E-2. Sentence adjudged 27 November 2018 by SpCM convened at Edwards Air Force Base, California.

*For Appellant:* Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Judge D. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Senior Judge LEWIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

D. JOHNSON, Judge:

A special court-martial composed of a military judge convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of one specification of wrongful use of tetrahydrocannabinol (THC) on divers occasions in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C.

§ 912a.[1] The adjudged sentence consisted of a bad-conduct discharge, confinement for 45 days, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged, but then pursuant to the military judge's order credited Appellant "one stripe" and five days of confinement based upon a prior nonjudicial punishment (NJP) action under Article 15, UCMJ, 10 U.S.C. § 815.[2] The PTA had no impact on the convening authority's ability to approve the adjudged sentence.[3]

Appellant raises four assignments of error on appeal: (1) whether the military judge erred in admitting the testimony of the Government's rebuttal sentencing witness contrary to Rule for Courts-Martial (R.C.M.) 1001(c)(2)(C); (2) whether the assistant trial counsel erred during the Government's sentencing argument; (3) whether the record of trial (ROT) is incomplete; and (4) whether Appellant is entitled to new post-trial processing because the staff judge advocate's recommendation (SJAR) failed to correctly advise the convening authority of the maximum imposable sentence and his ability to disapprove, commute, or suspend in whole or in part the term of confinement.[4] Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant's THC use began in approximately December 2017 with Appellant smoking marijuana several times with a fellow Airman in his unit.[5] During the charged timeframe, on divers occasions, Appellant ingested THC by

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] In the NJP action, Appellant was found to have committed the offense of wrongful use of THC between on or about 19 February 2018 and on or about 19 March 2018, which overlapped with the charged timeframe before the court-martial. The military judge awarded Appellant a "one-stripe" credit based on his prior NJP of one reduction in grade, and five days confinement credit based on the NJP reprimand. *See United States v. Pierce*, 27 M.J. 367 (C.A.A.F. 1989).

[3] The PTA provided that the convening authority would approve no confinement in excess of 90 days, but included no other limitations on the sentence he could approve.

[4] The language of Appellant's assignments of error have been reworded.

[5] The following factual summary is drawn primarily from the stipulation of fact Appellant signed in accordance with his PTA. Appellant stipulated THC is "believed to be the main ingredient that produces mood-altering effects" in marijuana.

several methods including: (1) smoking marijuana cigarettes; (2) smoking marijuana from a bong; and (3) ingesting cannabis oil containing THC using a handheld vaporizer device or "vape pen." Appellant facilitated his acquisition of THC by obtaining a medical marijuana card in the state of California.

On 19 March 2018, Appellant submitted a urine sample pursuant to a "random unit inspection" at Edwards Air Force Base (AFB) which subsequently tested positive for THC above the Department of Defense (DoD) cutoff level of 15 nanograms per milliliter (ng/ml). On 3 April 2018, after waiving his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831, Appellant spoke with Security Forces investigators at Edwards AFB, provided a sworn statement regarding his uses, and consented to a search of his dormitory room on base and cellular telephone. During the search of Appellant's dormitory room, investigators seized cannabis oil and a marijuana-grinding device which he received as a free gift when making his online purchase of the cannabis oil. Later, Appellant tested positive for THC on six different occasions from samples collected between 3 April 2018 and 18 July 2018.[6] Appellant's sample collected on 17 August 2018 tested negative.

## II. DISCUSSION

### A. Government's Rebuttal Witness

#### 1. Additional Background

During the Defense's presentencing case, Appellant provided both an oral and written unsworn statement pursuant to R.C.M. 1001(c)(2)(C). Appellant wrote in his unsworn statement: "Not long after I got back to Edwards [AFB], there was a mass drug-test. I knew I was going to fail after what I had done. After I failed, I was called in to be investigated by security forces and [the Air Force Office of Special Investigations]. *I cooperated with them the best that I could*." (Emphasis added).

In rebuttal to Appellant's unsworn statement, the Government called Investigator JS from the Security Forces squadron at Edwards AFB to testify. The Defense did not object. Investigator JS testified that he interviewed Appellant about his drug use. The assistant trial counsel then handed Defense Exhibit E, Appellant's written unsworn statement, to Investigator JS to review, again without objection.

---

[6] According to the stipulation of fact, Appellant's urine tested positive for THC, above the DoD cutoff level, six additional times including: 3 April at 226 ng/ml; 26 April at 201 ng/ml; 9 May at 26 ng/ml; 24 May at 166 ng/ml; 11 June at 418 ng/ml; and 18 June at 375 ng/ml.

After Investigator JS reviewed the last page of Appellant's written unsworn statement, the following dialogue occurred:

[ATC (assistant trial counsel):] Investigator [JS], although [Appellant] eventually cooperated with you during that investigation, did he do it to the best of his ability at first?

[Investigator JS:] No.

DC [trial defense counsel]: Objection, Your Honor. I don't know how you could determine whether someone has cooperated to the best of their ability. I don't know if there is a foundation necessarily for that determination.

MJ [military judge]: So you need the foundation, correct, defense?

DC: Yes, sir.

MJ: All right. Government, what is your response?

ATC: May I have minute, Your Honor?

MJ: Yes, you may have a moment.

[The assistant trial counsel conferred with co-counsel.]

MJ: Government, what is your response?

ATC: Your Honor, the government can ask a few more questions.

MJ: All right. *I will sustain the defense's objection.* Government, you may lay a foundation. You may continue, government.

[STC (senior trial counsel):] All right. Investigator [JS], during this investigation, was [Appellant] cooperative with you?

[Investigator JS:] At time [sic], yes.

[STC:] And what about those other times?

[Investigator JS:] He was asked specifically if he knew about another Airman who he potentially was smoking with. He initially had denied the allegation, but then admitted that he did smoke with the other Airman and knew about it.

[STC:] Okay. And was there any amount of resistance to coming forth with this information?

[Investigator JS:] Yes.

[STC:] Can you describe that?

[Investigator JS:] So during the course of the interview, I had asked him again about the other Airman that he potentially had

> smoked with. He did resist and said that he didn't know any-
> thing about [sic]. I then asked for consent to look at his tele-
> phone—at his cell phone to look at messages between this other
> Airman. He had consented to this. After looking through the
> messages, I found messages between him and this other Airman,
> and did talk about a number of different things in code words for
> what is marijuana to include the words "green" and things of
> that nature. After confronting him more, he then later admitted,
> yes, he did know the Airman that was in question and that he
> did smoke with him.

(Emphasis added).

Appellant argues the military judge abused his discretion because Appellant's statement that he "cooperated with [law enforcement] *the best that I could*" was the expression of an opinion and therefore not a rebuttable fact in accordance with R.C.M. 1001(c)(2)(C). Appellant contends that "the most Investigator JS was able to do was rebut Appellant's opinion with a speculative opinion of his own." Appellant avers that "Investigator JS would never have the personal knowledge necessary to rebut an opinion except to lay foundation and supply his own opinion," which Appellant avers is not permissible. Finally, Appellant contends that he was prejudiced by this error because it substantially influenced his adjudged sentence.

The Government responds that the correct standard of review is plain error—not abuse of discretion—and the statement made by Appellant was a statement of fact and was properly rebutted. The Government also contends that even if this court finds error, Appellant did not suffer material prejudice. We agree with the Government that the standard of review is plain error; that Appellant's statement was a properly rebutted statement of fact; and that Appellant suffered no material prejudice.

### 2. Law

R.C.M. 1001(c)(2)(C) states "[t]he accused may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statement of facts therein."

We review "a military judge's decision to admit evidence for an abuse of discretion." *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018) (quoting *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). Military judges abuse their discretion when their "factual findings are clearly erroneous, view of the law is erroneous, or decision is outside of the range of reasonable choices." *United States v. Hutchins*, 78 M.J. 437, 444 (C.A.A.F. 2019) (citing *United States v. Bess*, 75 M.J. 70, 73 (C.A.A.F. 2016)). However, in the absence

of an objection at trial, we review claims of erroneous admission of evidence for plain error, which is established when: (1) there was error; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to the appellant's substantial rights. *See United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) (citation omitted). An appellant "has the burden of persuading the court that the three prongs of the plain error test are satisfied." *Id.* (citation omitted).

If evidence is improperly admitted during sentencing proceedings, "the test for prejudice is whether the error substantially influenced the adjudged sentence." *Barker*, 77 M.J. at 384 (internal quotation marks and citation omitted). We evaluate the relative strength of the parties' cases along with the materiality and quality of the evidence in question. *Id.* (citation omitted). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id.* (citation omitted).

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). As the sentencing authority, military judges are presumed to know the law and apply it correctly. *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009) (citations omitted). That presumption holds absent clear evidence to the contrary. *Id.* (citations omitted).

In *United States v. Cleveland*, the appellant made an oral unsworn statement and told the court members, "Although I have not been perfect, *I feel* that I have served well and would like an opportunity to remain in service, regain the trust and respect of my co-workers and supervisors." 29 M.J. 361, 362 (C.M.A. 1990) (emphasis added). The United States Court of Military Appeals (CMA), the predecessor to the United States Court of Appeals for the Armed Forces (CAAF), held that the accused's statement was not a statement of fact, but "more in the nature of an opinion—indeed, an argument." *Id.* at 363–64. Additionally, the CMA was "unable to conclude that the evidence of appellant's uncharged misconduct tended to 'explain' the remark that he had made in his unsworn statement." *Id.* at 364.

In *United States v. Manns*, the appellant made an oral unsworn statement and told the military judge, "I have tried throughout my life, even during childhood, to stay within the laws and *regulations of this country*." 54 M.J. 164, 165 (C.A.A.F. 2000). The CAAF distinguished this statement from that made in *Cleveland*, stating, "Unlike *Cleveland* . . . this case involves appellant's assertion of fact that he had tried to obey the law. Thus, we hold that the prosecution was entitled to produce evidence that appellant had not tried, or at least had not tried very hard." *Id.* at 166.

### 3. Analysis

#### a. Standard of Review

As an initial matter we must resolve the discrepancy between the parties on the correct standard of review. Appellant argues abuse of discretion is applicable and the Government argues plain error is the correct standard of review. As noted above, Appellant's initial objection to foundation was sustained by the military judge, and there were no further defense objections during the testimony of JS. As such, the applicable standard is plain error.

#### b. Rebuttal Testimony

We disagree with Appellant's contention that Investigator JS was unable to rebut whether Appellant "cooperated with law enforcement the best that [he] could."

We find Appellant's claim of cooperation to the best of his ability constitutes an assertion of fact. We agree with the Government that Appellant's statement that *he cooperated the best that [he] could* is analogous to the appellant's statement in *Manns* that *he tried to obey the law*. 54 M.J. at 165. And unlike the statement by the appellant in *Cleveland*, Appellant's statement of his limited ability to cooperate was more contrary to the rebuttal evidence that the CMA found was improper rebuttal. Investigator JS explained that Appellant resisted assisting in the investigation of another Airman because he was initially unwilling to do so, not because he was incapable due to some circumstance beyond his ability to control. Appellant initially denied knowing of another Airman's drug use and smoking with that Airman. It was not until Investigator JS confronted Appellant with messages with this other Airman on his phone with code words indicating marijuana that Appellant admitted he knew of this Airman's drug use and had in fact smoked with him. This testimony directly rebuts the statement of fact that Appellant "cooperated with [law enforcement] the best that [he] could." If Appellant had stated "*I feel*" or "*I believe I cooperated*" that might have been indicative of an opinion, not a fact—but he did not. The Government was entitled to produce evidence that initially lying to law enforcement is not cooperating to the best of one's ability. Since the testimony was proper rebuttal pursuant to R.C.M. 1001(c)(2)(C) the military judge did not commit error in allowing the testimony, much less plain error.

#### c. Prejudice

Assuming *arguendo* that it was plain error to consider the testimony, we disagree with Appellant that the testimony had a substantial influence on his adjudged sentence. We apply the factors cited in *Barker*—the relative strength of the parties' cases, along with the materiality and quality of the evidence—below. *See* 77 M.J. at 384 (citations omitted).

The Government's case was strong. Appellant's misconduct could have exposed him to the jurisdictional maximum of a special court-martial consisting of a bad-conduct discharge, 12 months' confinement, forfeiture of two-thirds pay per month for 12 months, and reduction to the grade of E-1. Trial defense counsel successfully negotiated a pretrial agreement which limited Appellant's confinement exposure to 90 days. Appellant's adjudged sentence, before the *Pierce* credit, was a bad-conduct discharge, 45 days confinement, and reduction to the grade of E-1. *United States v. Pierce*, 27 M.J. 367 (C.A.A.F. 1989).

Appellant's guilt was laid out in detail in the stipulation of fact which demonstrated that Appellant tested positive for THC on six occasions after his initial positive drug test from the unit inspection on 19 March 2018, and five occasions after his interview with investigators on 3 April 2018. Appellant's last positive urinalysis was from a sample collected on 18 July 2018. Appellant's commander testified that Appellant had low to medium rehabilitation potential, and testified concerning the impact of Appellant's THC use on the unit. His commander further testified that his duty performance was "right in the middle of the line" and elaborated further "he wasn't the sharpest Airman but he certainly wasn't the worst performance wise." Finally, the Government admitted two letters of reprimand for Appellant's failure to attend mandatory fitness formations and three enlisted performance reports which all contained negative performance indicators.

The Defense's case, which was comparatively weak, consisted of Appellant's oral and written unsworn statements; two character statements; and various pictures of Appellant during his military service and with his family. We acknowledge the mitigating testimony from Appellant's commander that "[Appellant's] mental health history, to me, started well before preferring charges or even testing positive for THC." We also recognize that Appellant stated he used THC only after seeking mental health treatment, and Appellant's cooperation with law enforcement as noted in Investigator JS's testimony. However, despite this information from Appellant before the military judge, the Government's evidence in aggravation—including the impact on Appellant's unit, Appellant's rehabilitation potential, and testing positive for THC six times after the initial unit urinalysis test and five times after his interview with law enforcement—overpowers the Defense's case.

The final two factors of the prejudice analysis, materiality and quality, require us to essentially assess "how much the erroneously admitted evidence may have affected the court-martial." *See United States v. Washington*, ___ M.J. ___, No. 19-0252, 2020 CAAF LEXIS 296, at *12 (C.A.A.F. 29 May 2020). We are to consider the particular factual circumstances of each case. Two considerations CAAF discussed in *Washington* that also are relevant here include the extent to which (1) the Government referred to the evidence in argument

and (2) the evidence contributed to the Government's case. *See id.* (citations omitted).

As for the first consideration—the extent to which the Government referred to the evidence in argument—the Government did not argue the rebuttal evidence at all during its sentencing argument. The assistant trial counsel provided other justifications for her sentencing recommendation focusing mainly on Appellant's continued use of marijuana after his interview with law enforcement. As to the second consideration—the extent to which the evidence contributed to the Government's case—any contribution it made was marginal in this judge-alone case.

As the CAAF did in *Barker*, we find it "highly relevant" that this case was tried before a military judge who is presumed to know the law. 77 M.J. at 384 (citations omitted). After evaluating Appellant's case using the four factors from *Barker*, we do not find that the assumed error substantially influenced the adjudged sentence. *See id.* (citation omitted).

## B. Improper Argument

Appellant alleges assistant trial counsel's argument was improper because (1) the Government argued for double punishment by asking the military judge to punish Appellant for the same offense for which he had received NJP which was improper and (2) the Government argued facts not in evidence.[7] For the purpose of analysis we assume the Government argued for double punishment and that it was plain or obvious error. Further, we find the Government argued facts that were not in evidence during its sentencing argument and it was plain or obvious error. However, we do not find Appellant suffered material prejudice.

### 1. Additional Background

#### *a. Double Punishment*

Appellant pleaded guilty to using THC on divers occasions between on or about 1 December 2017 and on or about 31 July 2018 in violation of Article 112a, UCMJ. During presentencing, the Government offered into evidence

---

[7] Appellant contends that the Government should not have offered the NJP action because they are not the gatekeeper of that evidence. This contention does not account for trial defense counsel's statement that he did not object to the admissibility of the NJP action "for the purposes of getting the credit for the Article 15 punishment" which we find waived the issue of the NJP's admissibility. *See United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009). We acknowledge our discretion to pierce waiver to correct a legal error under Article 66, UCMJ, 10 U.S.C. § 866. *See generally United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018). We decline to disturb Appellant's waiver.

Prosecution Exhibit (P.E.) 4 for identification which was Appellant's "personnel information file." Included in P.E. 4 was an NJP action in which Appellant's commander found he used THC between on or about 19 February 2018 and on or about 19 March 2018 in violation of Article 112a, UCMJ. After finding Appellant committed the offense, his commander reduced Appellant one grade from Senior Airman to Airman First Class, and issued a reprimand. Prosecution exhibit 4 was admitted into evidence by the military judge without objection.

After the NJP was admitted, the Government assured the military judge that it was not seeking to punish Appellant for the timeframe included within the NJP action. Prior to argument on sentencing, the military judge stated, "Government, I won't consider double punishment in this case, and I appreciate that concern and bringing that to my attention."

Assistant trial counsel began her sentencing argument by stating, "Your Honor, this isn't just a case about at least *eight months* of marijuana use . . . . We are here because [Appellant] flagrantly ignored the military standards and broke the law for at least *eight months*." (Emphasis added). Later she argued that Appellant broke the law repeatedly for *at least eight months* and "*[e]ight months is a long moment*." (Emphasis added). Finally, she argued that Appellant "needs to feel the consequences of his actions. [Appellant] broke the law *for almost a year*." (Emphasis added). Assistant trial counsel's argument failed to exclude, or clarify, from the eight-month calculation the one-month timeframe for which Appellant received the NJP action.

There was no objection from trial defense counsel to any portion of assistant trial counsel's argument. The Government argued for one month of confinement, reduction to the grade of E-1, and a bad-conduct discharge as an appropriate sentence.

### b. Facts Not in Evidence

Assistant trial counsel argued during her sentencing argument, "[Appellant's] commander told you she didn't know what else to do in order to get [Appellant] to stop using drugs; and that when she restricted [Appellant] to base on August 9th that is why she restricted him to base . . . ." Although Appellant's squadron commander testified during presentencing, she did not testify about Appellant's restriction to base or her rationale for restricting Appellant. The transcript demonstrates that it was Appellant who discussed his restriction to base during his oral unsworn statement while explaining the time period of the restriction and the fact he never violated the restriction. Appellant never discussed the commander's rationale for the restriction.

**2. Law**

Improper argument is a question of law that this court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). If a proper objection is not made we test for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citation omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). The burden of proof under a plain error review is on the appellant. *See United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted).

"Improper argument is one facet of prosecutorial misconduct." *Sewell*, 76 M.J. at 18 (citation omitted). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (alteration in original) (quoting *Fletcher*, 62 M.J. at 179). Such misconduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, [for example], a constitutional provision, a statute, a [Manual for Courts-Martial] rule, or an applicable professional ethics canon." *Id.* at 160 (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

Improper argument does not automatically require a new trial or the dismissal of the charges against the accused. *Fletcher*, 62 M.J. at 178 (citation omitted). Relief will be granted only if the trial counsel's misconduct "actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *Id.* (quoting *Meek*, 44 M.J. at 5).

The CAAF recommended balancing three factors to assess whether misconduct impacted the appellant's substantial rights and the integrity of his trial: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id.* at 184. The *Fletcher* court did not articulate how much weight to give each factor. *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017).

The CAAF extended the *Fletcher* test to improper sentencing argument in *Halpin*, 71 M.J. at 480. In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether "'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the appellant] was sentenced 'on the basis of the evidence alone.'" *Id.* at 480 (alteration in original) (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). The CAAF in *United States v. Frey* framed the third *Fletcher* factor as "the weight of the evidence supporting the sentence." 73 M.J. 245, 249 (C.A.A.F. 2014) (citation omitted).

Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citation omitted). Trial counsel may also argue for an appropriate sentence, recommend a specific lawful sentence, and may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution. R.C.M. 1001(g).

As the CAAF has explained:

> When the issue of plain error involves a judge alone trial, an appellant faces a particularly high hurdle. A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence. . . . As a result, "plain error before a military judge sitting alone is rare indeed."

*Robbins*, 52 M.J. at 457 (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996) (citations omitted)). Similarly, we presume the military judge is able to filter out improper argument in the absence of evidence to the contrary. *United States v. McCall*, No. ACM 39548, 2020 CCA LEXIS 97, at *20 (A.F. Ct. Crim. App. 26 Mar. 2020) (unpub. op.).

The CAAF, in *Pierce*, addressed the requirement in Article 15(f), UCMJ, 10 U.S.C. § 815(f), to consider in mitigation of the sentence any prior NJP action for the same offense introduced into evidence by the accused. Such consideration is designed to ensure the accused is not punished twice for the same offense. 27 M.J. at 369.

**3. Analysis**

***a. Double Punishment***

We assume without deciding that assistant trial counsel improperly argued for double punishment. We will address whether Appellant suffered prejudice from this improper argument after discussing Appellant's contention that assistant trial counsel also improperly argued facts not in evidence.

***b. Facts Not in Evidence***

We find that the assistant trial counsel argued facts not in evidence. Appellant's squadron commander never testified concerning Appellant's restriction to base. Although Appellant discussed the topic in his oral unsworn statement, he did not address his commander's rationale for the restriction. Assistant trial counsel's argument that Appellant's commander restricted him to base in order to stop him from using drugs was erroneous; it was plain or obvious; and therefore we test for prejudice.

### c. Prejudice

"Though *Fletcher* recommended a balancing of all three factors, it did not assign a particular value to each or comment on whether they should be weighed equally." *Frey*, 73 M.J. at 251. In this case, considering the cumulative impact of arguing for double punishment and facts not in evidence in the context of the trial as a whole, we find as the CAAF did in *Halpin* that the third *Fletcher* factor—the weight of the evidence— weighs so heavily in favor of the Government that we are confident that Appellant was sentenced on the basis of the evidence alone. *See Halpin*, 71 M.J. at 480.

Appellant's misconduct could have exposed him to the jurisdictional maximum of a special court-martial including a bad-conduct discharge, 12 months' confinement, forfeiture of two-thirds pay per month for 12 months, and reduction to the grade of E-1. Trial defense counsel successfully negotiated a pretrial agreement which limited Appellant's confinement exposure to 90 days. Appellant's adjudged sentence, before the *Pierce* credit, was a bad-conduct discharge, 45 days' confinement, and reduction to the grade of E-1.

As stated above, the uncontroverted evidence against Appellant, as admitted in his stipulation of fact, showed that Appellant tested positive five additional times for THC for over three months after his 3 April 2018 interview with law enforcement investigators. In recommending a sentence of a bad-conduct discharge, at least one month of confinement, and reduction to the grade of E-1, assistant trial counsel focused her argument on Appellant's continuing positive urinalysis results. Trial defense counsel in his own argument recommended a sentence of up to two months' confinement, one month of hard labor without confinement, and a reduction in grade that the military judge felt was appropriate. Trial defense counsel focused his argument on Appellant's "clinical decision" to medicate himself after other efforts failed rather than "killing himself."

Finally, and quite importantly, this was a military judge-alone trial and the military judge is presumed to know what portions of argument are impermissible absent clear evidence to the contrary. *See United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (citations omitted). In this case, the military judge stated on the record he was not going to doubly punish Appellant. Even if each statement Appellant takes issue with was plain or obvious error, Appellant failed to establish that the weight of the evidence did not clearly support the adjudged sentence and is therefore not entitled to relief.

## C. Record of Trial

Appellant next asserts that the ROT is incomplete because two items were missing: (1) a motion for release filed by Appellant's initial trial defense coun-

sel, Captain (Capt) AD; and (2) an appellate exhibit consisting of slides assistant trial counsel used in her sentencing argument. Appellant claims each of these missing items are substantial—rendering the ROT incomplete—and as a result requests this court set aside his bad-conduct discharge. While we find the appellate exhibit of the sentencing argument slides is missing from the authenticated record, we are not persuaded that the ROT is incomplete.

### 1. Additional Background

#### a. Motion

According to the parties at trial, prior to his court-martial, Appellant requested release of his trial defense counsel, Capt AD. Capt AD subsequently filed a motion for release on 31 October 2018. That same day, the initial military judge on Appellant's case granted the motion.

During Appellant's court-martial the military judge informed Appellant of his rights to counsel. When the military judge inquired by whom Appellant wished to be represented, Appellant replied "By Capt [LL], sir." The military judge then asked, "And by Capt [LL] alone," and Appellant replied, "Yes, sir."

Shortly afterwards while summarizing a previous conference held pursuant to R.C.M. 802, the military judge asked Capt LL, "[I]t is also my understanding that you are not going to put into the record Capt [AD's] motion; is that correct?" Capt LL responded, "Yes, Your Honor." The military judge then said, "If you want to put that in the record that is fine defense, and if you don't that is fine as well. All right?" Capt LL then responded, "Thank you, Your Honor." There is no evidence in the record that Capt LL requested the motion be marked as an appellate exhibit.

#### b. Slides

During trial, while still discussing the R.C.M. 802 conference referenced above, the military judge stated the following:

> The [G]overnment also informed me that they had requested a break prior to their sentencing argument, which you may have, to set up your slides. I also requested the [G]overnment just to consult with the court reporter to ensure that the slide is marked as an appropriate appellate exhibit for the record. I have a copy of the slide, [G]overnment, so I don't need a copy, but please provide a copy to the [D]efense if you have not already done so.

### 2. Law

A complete record of the proceedings and testimony shall be prepared in each special court-martial where the adjudged sentence includes, *inter alia*, a bad-conduct discharge. Article 54, UCMJ, 10 U.S.C. § 854. A complete record

of trial includes all *appellate exhibits*, or an adequate substitute with the permission of the military judge. R.C.M. 1103(b)(2)(D)(v), (c)(1) (emphasis added); *United States v. Gaskins,* 72 M.J. 225, 230 (C.A.A.F. 2013).

Whether an omission from a ROT is substantial is a question of law we review de novo. *United States v. Stoffer*, 53 M.J. 26, 27 (C.A.A.F. 2000). A record of trial that is missing exhibits may be substantially incomplete. *Id.* at 26 (holding that the record was substantially incomplete for sentencing when all three defense sentencing exhibits were missing). However, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *United States v. Henry,* 53 M.J. 108, 111 (C.A.A.F. 2000) (holding that four missing prosecution exhibits were insubstantial omissions when other exhibits of similar sexually explicit material were included). "[A] substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the government must rebut." *United States v. Harrow,* 62 M.J. 649, 654 (A.F. Ct. Crim. App. 2006) (citation omitted), *aff'd*, 65 M.J. 190 (C.A.A.F. 2007). We must approach the question of what constitutes a substantial omission on a case-by-case basis. *United States v. Abrams,* 50 M.J. 361, 363 (C.A.A.F. 1999) (citation omitted).

**3. Analysis**

There is no question that the authenticated record of trial does not contain either (1) Capt AD's motion or (2) assistant trial counsel's slides used during argument. However, the analysis does not end there. First, we must determine if the document is indeed an omission, and second, if actually an omission, whether the omission is substantial—requiring the Government to rebut a presumption of prejudice. We will examine each document separately.

**a. Motion**

This document, although not contained in the ROT, is not an omission from the record. Nothing in the record before us indicates this motion was ever marked as an appellate exhibit requiring inclusion into the record. Appellant avers that the military judge was required to have the exhibit marked as an appellate exhibit, but does not cite any authority for this position. The military judge gave the trial defense counsel the option to include the motion in the record, and he chose not to have the exhibit marked as an appellate exhibit. The absence of the motion in the record is not just insubstantial, it is not an omission at all.

**b. Slides**

This court granted a motion to attach, over Appellant's objection, a declaration from assistant trial counsel and three slides, one of which has data and the other two of which are solid black. Assistant trial counsel avers the slides, which are not marked as an appellate exhibit, are the slides she used during

her sentencing argument. The writing on the one slide has the date December 2017 to the far left and then a bar graph with dates from 3 April to 18 July with nanogram levels which match the dates and nanogram levels contained in the stipulation of fact indicating when Appellant provided urine samples and the concentration of THC in those samples. In addition, the slide depicts the statement "I know it was wrong when I did it. For some reason, I justified it in my mind, even though I knew it was wrong while I was doing it."

As an initial matter, we must decide whether we can consider the slides under *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020). *Jessie* was decided after we granted the Government's motion to attach. We find we can consider the slides for the purpose of our analysis as the slides were clearly raised in the record when the military judge ordered them marked as an appellate exhibit. *See id.* at 444.

We next turn to whether the missing slides are an omission and, if so, whether it was substantial. We find that the absence of a document that the military judge ordered into the record is an omission. Finding an omission, our next step is to determine if the omission is substantial, and we conclude it was not. Of the three slides attached to the record, only one has any type of data on it; the other two are solid black. The first slide has dates indicating when Appellant tested positive and his nanogram level for each test. This information is identical to the information contained in the stipulation of fact. Further, the nearly identical quotation from Appellant was provided by Appellant during the providence inquiry.

After a review of the entire ROT, we are confident that the missing slides are an insubstantial omission and the record is complete under Article 54, UCMJ. The missing slides have no impact on the underlying evidence or the providence of Appellant's guilty plea. This is not just a case where other exhibits contained *similar* information and the omission was therefore insubstantial; in this case the record contains nearly *identical* information. Appellant used almost identical language under oath during his providency inquiry as quoted on the slide; and the stipulation of fact contains an identical listing of Appellant's positive drug test results by date and the nanogram levels as represented on the slide. Furthermore, unlike in *Stoffer* and *Henry* where the missing documents were evidence, the slides were a demonstrative aide for an argument that is not evidence. *See Fletcher,* 62 M.J. at 183.

**D. SJAR**

Appellant next argues that the SJAR contained two errors requiring new post-trial processing: (1) the SJAR inaccurately advised the convening authority of the maximum punishment for a special court-martial; and (2) the SJAR

failed to inform the convening authority that he had the authority to disapprove, commute, or suspend in whole or part the term of confinement. We disagree that new post-trial processing is required.

**1. Additional Background**

Following Appellant's trial, the staff judge advocate (SJA) prepared the SJAR to guide the convening authority's action on the results of the court-martial. The SJAR provided, *inter alia*, the following advice:

> The maximum imposable sentence for the offense for which the accused was convicted is a bad conduct discharge, *forfeiture of all pay and allowances*, and confinement for twelve (12) months.
>
> . . . You do not have the authority to disapprove, commute or suspend in whole or part the punitive discharge. You do have the authority to disapprove, commute, or suspend in whole or in part the *reduction in rank*.

(Emphasis added). The SJAR initially recommended the convening authority only approve "so much of the sentence as calls for confinement" but later concluded with a recommendation that the convening authority "approve the sentence as adjudged."

In accordance with R.C.M. 1106(f)(1), trial defense counsel was served with a copy of the SJAR prior to a decision whether to submit matters on behalf of Appellant for the convening authority's consideration pursuant to R.C.M. 1105. Appellant subsequently waived in writing his right to submit clemency matters and his trial defense counsel submitted a separate memorandum indicating that Appellant was advised of his right to submit matters.

After Appellant waived his right to submit matters, the SJA prepared an addendum to the SJAR that again recommended approval of the sentence as adjudged but advised the convening authority the military judge awarded "one (1) stripe credit based upon a one (1) stripe reduction as a result of a previously issued nonjudicial punishment and awarded five (5) days of confinement credit based upon a reprimand given as a result of a previously issued nonjudicial punishment." The convening authority approved the adjudged sentence, but instructed that Appellant would be credited with the "one stripe" and five days of confinement credit. The action from the convening authority states *inter alia*: "The term of confinement having been served, no place of confinement is designated."

Appellant contends there is a colorable showing of possible prejudice because stating the incorrect maximum punishment made it seem as if Appellant received a more lenient sentence than possible. Appellant also believes the two errors "provide a misleading juxtaposition of Appellant's sentence and what

Appellant could have received and what clemency could have been granted by the Convening Authority."

The Government concedes the misstatement of the maximum punishment was error, but argues Appellant has not made a colorable showing of possible prejudice. As to the omission of the convening authority's power with regard to confinement, the Government argues it is not error, much less plain or obvious error.

### 2. Law

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). "Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error." *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (citing R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). To prevail under a plain error analysis, an appellant must show: "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Scalo*, 60 M.J. at 436).

To meet the third prong of the plain error test "in the context of a post-trial recommendation error, whether that error is preserved or is otherwise considered under the plain error doctrine, an appellant must make 'some colorable showing of possible prejudice.'" *Scalo*, 60 M.J. at 436–37 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). "The low threshold for material prejudice with respect to an erroneous post-trial recommendation . . . is designed to avoid undue speculation as to how certain information might impact the convening authority's exercise of such broad discretion." *Id.* at 437 (citation omitted). While the threshold is low, "there must be some colorable showing of possible prejudice." *Id.* (citing *Kho*, 54 M.J. at 65). Whether an appellant was prejudiced by a mistake in the SJAR generally requires consideration of "whether the convening authority 'plausibly may have taken action more favorable to' the appellant had he or she been provided accurate or more complete information." *United States v. Kyc,* No. ACM S32391, 2017 CCA LEXIS 376, at *6 (A.F. Ct. Crim. App. 30 May 2017) (unpub. op.) (citing *United States v. Johnson*, 26 M.J. 686, 689 (A.C.M.R. 1988), *aff'd*, 28 M.J. 452 (C.M.A. 1989)) (additional citation omitted).

Because Appellant did not object to the SJAR, we test for plain error. We consider each asserted error in turn.

### 3. Analysis

#### *a. Misstatement of the Maximum Punishment*

The maximum forfeiture that a special court-martial may adjudge is two-thirds of the accused's pay per month for 12 months. R.C.M. 201(f)(2)(B)(i). Thus, Appellant could not have been sentenced to "forfeiture of all pay and allowances" and the SJAR is plainly erroneous in that respect.

However, Appellant has not made a colorable showing of possible prejudice arising from this plain or obvious error. The military judge did not adjudge any forfeiture of pay. Thus, the convening authority was not called upon to make any decisions regarding adjudged forfeitures when he acted upon the sentence. We are not persuaded the misstatement of the jurisdictional maximum punishment for forfeitures in any way influenced the convening authority to Appellant's detriment. Because Appellant has failed to make a "colorable showing of possible prejudice," he is entitled to no relief.

#### *b. Authority to Disapprove the Adjudged Confinement*

As an initial matter, this court granted a motion to attach Appellant's Department of Defense Form 2718, *Prisoner Release Order* (Mar. 2013) (DD Form 2718), which we did not consider in our analysis below. *See Jessie*, 79 M.J. at 444–45.

R.C.M. 1106(d)(3) does not list a statement of the convening authority's power among the "required contents" of an SJAR. We find no plain or obvious error in the SJAR which complies with R.C.M. 1106 and caselaw.

Assuming *arguendo* that it was error for the SJAR to omit the convening authority's ability to disapprove the adjudged confinement and that the error was plain or obvious, we are not persuaded that the omission in any way influenced the convening authority to Appellant's detriment.

We agree with Appellant that the SJA plays a "pivotal role in an accused's chances for relief." *United States v. Taylor*, 60 M.J. 191, 194 (C.A.A.F. 2004) (citation omitted). However, there is one individual in the clemency process that arguably plays an even more pivotal role—the appellant. Appellant never exercised his right to request the convening authority to disapprove his confinement, he chose to waive his right to submit matters altogether. Further, the convening authority that signed the PTA with Appellant is the same convening authority that took action on his case. The PTA between the convening authority and Appellant limited the amount of confinement the convening authority could approve to 90 days; once *Pierce* credit was given, Appellant was sentenced to less than half that amount. Additionally, by the date of the convening authority's action Appellant already had served his period of confinement. Finally, the SJAR correctly advised the convening authority that he

could disapprove the reduction in grade and the convening authority declined to do so.

We considered whether the convening authority "plausibly may have taken action more favorable to" Appellant had he been provided more complete information. *Johnson*, 26 M.J. at 689; *see also United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). Under these circumstances, we find no plausible reason to conclude that the convening authority would have taken a more favorable action if he had been explicitly advised that he could disapprove, commute, or suspend, in whole or in part, the confinement. Because Appellant has failed to make a colorable showing of possible prejudice, he is entitled to no relief.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court